[No. 15523.   Department Two.   March 22, 1920.]

E. E. Uden, *Respondent*, v. A. Schaefer *et al.,*
*Appellants.*[1]

Indemnity (5)—Construction of Contract—Extent of Liability —"Strike" or "Labor Difficulties" in Building Bond.   The fact that a plumbing contractor was suspended from a plumbers' association and his two union plumbers quit and he was unable to get anyone to work for him, does not relieve his surety from liability for nonperformance of the contract, under the exception clause in the bond excluding liability in the case of "strikes" or "labor difficulties"; as there was no "strike" and the phrase "labor difficulties" is definitive rather than expansive.

Appeal from a judgment of the superior court for King county, Hall, J., entered May 1, 1919, upon findings in favor of the plaintiff, in an action upon a building contract and surety bond, tried to the court. Affirmed.

*Roberts & Skeel,* for appellants.
*Walter S. Fulton,* for respondent.

Fullerton, J.—On March 4, 1918, the defendant Schaefer and the respondent Uden entered into a written contract whereby the defendant agreed to furnish all the necessary labor and material and install the plumbing and heating system in an apartment building which the respondent was then constructing. The contract price was $17,000, and was payable in monthly installments of eighty-five per centum of the value of the labor and material in place at the end of each monthly period. The contract provided that the defendant should furnish an approved surety bond for the amount of the contract price, "otherwise the contract shall be null and void." The defendant, in com-

[1]Reported in 188 Pac. 395.

pliance with the latter clause of the agreement, furnished a bond with the appellant Maryland Casualty Company as surety in the penal sum of $3,000, which the respondent accepted. The bond so furnished, following the usual obligatory clause, contained, among others, the following exceptions:

"Third, That the surety shall not be liable for any damages resulting from so-called strikes or labor difficulties, or from mobs, riots, fire, the elements, earthquake, cyclone, tornado, lightning, or any act of God, or for repair or reconstruction of any work or materials damaged or destroyed by any such causes; nor for the non-performance of any guaranties of the efficiency or wearing qualities of any work done or materials furnished or the maintenance thereof or repairs thereto; nor for patent infringement; nor for the furnishing of any bond or obligation other than this instrument; nor for damages caused by delay in finishing such contract in excess of ten per centum of the penalty of this instrument; nor for payments made, or for which the obligee shall become liable to pay, on account of death or personal injuries suffered by any person or persons."

The defendant began the performance of the work and pursued it for about two weeks, during which time he amassed some material and did some excavating. He then abandoned the work, and the respondent was compelled to relet it. This he did by calling for new bids. The best bid obtained for the uncompleted work was $19,122, and the work was let for that sum.

In this action, the respondent sues both the Maryland Casualty Company and the defendant Schaefer in damages as for a breach of the contract. The sum demanded totals $3,198.75, made up of the difference between the original contract price and the price for which the work was relet, together with the sum of $616, paid to carpenters for extra work alleged to have been made necessary by the defendant on account of

work performed by him while in the prosecution of the
original contract.

The action was tried by the court sitting without a
jury, and resulted in a judgment against both the de-
fendant and the Maryland Casualty Company in the
sum of $2,565.15, and an additional judgment against
Schaefer in the sum of $15. The Maryland Casualty
Company alone appeals.

The appellant defended the action on the ground that
the defendant's failure to perform the contract was
because of a strike on the part of his workmen, or at
least because of labor difficulties, and that it is thus
not liable to answer to the respondent for a breach of
the defendant's contract because of that clause of its
bond which exempts it from liability "for any damages
resulting from so-called strikes or labor difficulties."
Schaefer seems to have given different reasons at dif-
ferent times for his failure to perform the contract;
but, from his evidence given at the trial, we gather that
the cause of his failure was, in substance, this: At
the time of entering into the contract with the respond-
ent, he was a member in good standing of the Seattle
Plumbing and Heating Engineers' Association, which
association had agreed with the plumbers' unions that
its members in their contracting work would employ
thereon only members of such unions, and which unions
in turn had agreed not to work for any contracting
plumber who was not a member of the association in
good standing. That, when the respondent called for
bids for installing the plumbing and heating appli-
ances in his building, Schaefer, with other members of
the association, submitted bids, Schaefer's bid being
somewhat larger than the lowest bid submitted. The
respondent, for some reason, probably because he
thought them too high, did not accept any of the bids
submitted, and afterwards Schaefer entered into nego-

tiations with him which resulted in his entering into the contract out of which this controversy arises; the contract price being some two thousand dollars less than the lowest of the bids submitted under the call for bids. For this act, he was suspended from membership in the association, and when the suspension became known, the union plumbers which he then had in his employ, some two in number, quit his employment, and he was unable to procure others, either union or non-union, necessary to perform the work. He further testifies that there was no strike on the part of the workmen or labor difficulties with them; that those he had in his employ at the time quit, and he was unable to employ others to take their places because he could find no non-union plumbers, and union plumbers, because of their agreement, would not work for contractors not members of the association mentioned.

In our opinion, these facts do not exonerate the appellant from the obligations of its bond. In the common acceptation of the term, it is not a "strike" for the workmen of an employer to quit his employment and go elsewhere without any intention of returning, nor is it a "strike" for workmen to refuse to enter into the employment of a particular contractor. A "strike," in such common acceptation, is the act of quitting work by a body of workmen for the purpose of coercing their employer to accede to some demand they have made upon him, and which he has refused; but it is not a strike for workmen to quit work, either singly or in a body, when they quit without intention to return to the work, whatever may be the reason that moves them so to do. It is a matter of common knowledge that, during the late war period, many employers of labor, because of the great demand for labor, had difficulty in employing and keeping a sufficient

number of workmen. Many of such employers lost workmen in considerable numbers who had long been in their employment, and for a time had practically to suspend operations. No one, however, supposed that the quitting of those workmen constituted a "strike." Schaefer's situation here was not different. By his own act he had placed himself in a position where certain workmen could not remain in or enter into his employment without violating their agreement, and others he could not obtain, and in no sense can this be denominated a strike.

The addition of the phrase "labor difficulties" to the term "so-called strikes" does not enlarge the meaning of the latter. It is rather definitive than expansive of it. In other words, the phrase is but explanative of the meaning of the word strike, and any act of the workmen which would not constitute a strike would not constitute a labor difficulty.

A further contention is that the judgment as rendered is too large. Schaefer claimed while on the witness stand that there was a balance of $211.90 due him for work performed by him which the respondent had not paid, and this sum the appellant contends should be deducted from the judgment. On the question whether it was paid on not, the evidence was conflicting, and our examination of the evidence does not convince us that the court was in error in so finding.

The judgment is affirmed.

Holcomb, C. J., Tolman, Bridges, and Mount, JJ., concur.