BOYLSTON HOUSING CORPORATION *vs.* FRANK O'TOOLE
& others.

Suffolk.     October 5, 1942. — July 3, 1947.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, WILKINS, &
SPALDING, JJ.

*Unlawful Interference. Labor and Labor Union. Conspiracy. Contract,* Inducing breach of contract, Of employment, Construction, Performance and breach, Building contract, Waiver. *Boycott. Damages,* For breach of contract. *Equity Jurisdiction,* Retention of suit for assessment of damages. *Equity Pleading and Practice,* Injunction. *Res Judicata. Law of the Trial. Waiver. Words,* "Consequential damages."

A suit in equity seeking to restrain certain labor organizations and designated officers thereof from alleged unlawful interference with a construction project of the plaintiff, where the project was completed before a hearing on the merits, properly was retained for assessment of damages, if any, caused by conduct of the defendants unlawful against the plaintiff, although the bill contained no prayer for damages.

The determination of the question, whether the plaintiff in a suit in equity against certain labor organizations and designated officers thereof was entitled to relief by damages, depended upon whether, on

the allegations of the bill established by proof, the defendants, or any of them, were guilty of conduct unlawful against and causing the plaintiff damage.

No doctrine of the "law of the case" or the "law of the trial" or res judicata precluded a judge, hearing on the merits for assessment of damages a suit in equity in the Superior Court against certain labor organizations and designated officers thereof, from determining that the conduct of the defendants was not unlawful toward the plaintiff, although a justice of the Supreme Judicial Court upon a report under G. L. (Ter. Ed.) c. 214, § 9A (6), inserted by St. 1935, c. 407, § 4, had caused a decree to be entered that the case did not involve or grow out of a labor dispute within G. L. (Ter. Ed.) c. 149, § 20C inserted by St. 1935, c. 407, § 1, and a judge of the Superior Court had found that the defendants were actively preventing progress of a building project of the plaintiff and, unless restrained, would "continue to do so," and had granted a temporary injunction.

Refusal by a member of a labor union to work for an elevator company which was under an elevator installation contract with a builder who employed nonunion workmen, was not unlawful conduct toward the builder where, although the installation was delayed through such refusal, no contract with the elevator company or with the builder, directly or through the union, required the union member to accept such employment.

The right of a prospective employer to a "free flow of labor" is not a right to employ workmen who, for any reason, do not wish to enter such employment, but is merely a right to be free from unlawful interference with the employment of workmen who do wish to enter such employment.

Upon findings, justified by the evidence, that there was no "conspiracy" in a refusal by members of a labor union to work for an elevator company which was under an elevator installation contract with a builder employing nonunion workmen although the refusal was communicated to the elevator company by the business representative of the union, and that there was no attempted "monopoly" in the members of the union as applied to the work for which the elevator company sought to employ them, and in the absence of evidence that such conduct of the members of the union was intended to injure the builder although it resulted incidentally in damage to him through delay in the elevator installation, no wrong of the union members toward the builder by way of boycott or otherwise was established.

Mere choice by members of a labor union to adhere to a general policy of the union that it would not furnish members for work on nonunion or "open" jobs, in the absence of evidence showing coercion compelling such adherence by the taking of or threat of disciplinary action or otherwise, did not establish a wrong of the union members toward a builder incidentally damaged by such refusal.

Upon the hearing for assessment of damages of a suit in equity by a builder against the members of certain labor unions and designated officers thereof, where the determining issue was whether in the circumstances conduct of union members, in refusing to work for an ele-

vator company under contract with the plaintiff, a builder, for the installation of an elevator because the plaintiff employed nonunion workmen, was unlawful as to the plaintiff and entitled him to damages from the defendants for delay in the installation, findings by the judge that there was no strike, that there was no conspiracy to injure the plaintiff or monopoly in the refusal, and that whatever trouble or delay was occasioned to the plaintiff by the refusal was due to the adherence of the unions to a general policy not to allow union labor to work on nonunion or "open" jobs, justified a decree dismissing the suit.

Under provisions of a contract between a builder and an elevator company that the company should install an elevator for the building within a certain time but that it "in any event . . . shall not be liable for consequential damages," the company was not liable for loss of rents caused by delay in performance by it.

Upon findings by a judge justified by reported evidence, a manufacturer of elevator parts under contract with a builder was not liable for loss, if any, resulting from delay in installation of the parts after they were fabricated where such delay was caused, not by the manufacturer, but by conduct of another contractor installing other parts of the elevator for the builder; and the manufacturer was entitled to recover his contract price where delay in delivery of his parts to the job was acquiesced in by the builder.

BILL IN EQUITY, filed in the Superior Court on July 29, 1940, and afterwards amended.

The suit was heard on application for a preliminary injunction by *Brogna,* J., and in the Supreme Judicial Court by *Dolan,* J., under G. L. (Ter. Ed.) c. 214, § 9A (6), as inserted by St. 1935, c. 407, § 4. It was later heard on the merits in the Superior Court by *Greenhalge,* J. The plaintiff appealed from a final decree entered by his order.

In this court the case was argued at the bar in October, 1942, before *Field,* C.J., *Lummus, Qua,* & *Cox,* JJ., and, after the retirement of *Cox,* J., was submitted on briefs to *Ronan, Wilkins,* & *Spalding,* JJ.

*T. H. Mahony,* (*A. Moskow* with him,) for the plaintiff.

*M. Witte,* (*H. L. Barrett* with him,) for O'Toole and others.

*K. C. Parker,* (*W. G. Reed* with him,) for W. S. Tyler Company and Otis Elevator Company.

FIELD, C.J. This suit in equity was brought in the Superior Court. The plaintiff is the Boylston Housing Corporation. The suit, as alleged in the bill, was brought

against "Frank O'Toole, Ernest A. Johnson and Edwin E. Graves, . . . individually and as they are respectively the president, the secretary-treasurer, and the general agent of the Building & Construction Trades Council of Boston & Vicinity, a voluntary unincorporated association and all the other officers and members thereof who are numerous and most of whom are to your plaintiff unknown and who are fairly represented by said officers and have a common interest with them in the suit; Edward Lanphier and Edward I. Kelley, . . . individually and as they are respectively the financial secretary and the business representative of Local #4 of the Elevator Constructors' Union, a voluntary unincorporated association and all the other officers and members thereof who are numerous and most of whom are to your plaintiff unknown and who are fairly represented by said officers and have a common interest with them in the suit" — herein referred to as the labor defendants —and Otis Elevator Company, a corporation, and W. S. Tyler Company, a corporation, defendants. By amendment the words "Building and Construction Trades Council of the Metropolitan District" were substituted for the words "Building & Construction Trades Council of Boston & Vicinity," and the words "Local #4 of the International Union of Elevator Constructors" were substituted for the words "Local #4 of the Elevator Constructors' Union." After the entry of the final decree hereinafter referred to, the death of the defendant Edwin E. Graves was suggested, and his administratrix was substituted for him as a party defendant.

From undisputed evidence it appeared — and it is not controverted — that the members of the Building and Construction Trades Council of the Metropolitan District — herein referred to as the council — were delegates from various trades unions, of which there were fifty-nine, the members of which were engaged in the building crafts in and around Boston, that one of the unions was composed of members of the craft dealing with or working on the installation and construction of electric elevators and was named Local #4 of the International Union of Elevator Con-

structors — herein referred to as Local #4, that the "adjustment board" was one of the committees of the council, that the defendants O'Toole, Johnson and Graves were respectively the president, the secretary-treasurer, and the general agent of the council, and that the defendants Lanphier and Kelley were respectively the financial secretary and the business representative of said Local #4.

When this suit was brought on July 29, 1940, the plaintiff "was engaged in remodelling a four-story building at 1089 Boylston Street [Boston], by converting it into a five-story building with forty-three suites with kitchenettes. This was to be accomplished by constructing a new entrance in to what had been the basement and a general internal rearrangement which did not affect the walls or solid structural parts of the original building." "The work was in charge of Harry Moskow, a brother of the president and treasurer of the plaintiff, and was begun about the last of December, 1939, or the first of January, 1940." The plaintiff sought by this suit to have the "defendants" temporarily and permanently enjoined from interfering with the work of remodelling this apartment house, particularly from interfering with the carrying out of a contract of the defendant Otis Elevator Company with the plaintiff to install in said building an electric elevator, and from interfering with the carrying out of a contract of the defendant W. S. Tyler Company with the plaintiff to install in said building five elevator fronts and entrances and an elevator car. The plaintiff sought also to have the "defendants" temporarily and permanently enjoined from interfering with the work of the plaintiff on any other building. An interlocutory decree was entered, after hearing, temporarily enjoining the labor defendants from "interfering with and preventing the fulfillment of the contract between the plaintiff and the defendant Otis Elevator Company and the contract between the plaintiff and the defendant W. T. [S.] Tyler Company." There was no appeal from this interlocutory decree. The defendant W. S. Tyler Company, by amendment, inserted in its answer a counterclaim for breach by the plaintiff of its contract with this defendant. Thereafter the

suit was heard on the merits. At the opening of the hearing on the merits, counsel for the plaintiff conceded that the work on the apartment house at 1089–1091 Boylston Street had been completed, but stated that "the corporation is engaged in the building business and intends to continue in the building business, and for that reason seek[s] to have the injunction made permanent against their [the defendants' or some of the defendants'] interference with the maintenance [by the plaintiff] of an open shop." After hearing, a final decree was entered dismissing the bill against all the defendants, but ordering "judgment" for the defendant W. S. Tyler Company on its counterclaim against the plaintiff. From this final decree the plaintiff appealed. There is a "statement of findings, rulings and order for decree" by the judge. The evidence at the hearing on the merits is reported.

First. We consider first whether the plaintiff is entitled to recover damages against the labor defendants or any of them.

1. Since the work on this apartment house was completed before the hearing on the merits, there was not at that time and is not now any occasion for injunctive relief against any of the labor defendants with respect to the work on this apartment house. However, it is elementary "that a plaintiff who had good ground for injunctive relief when the bill was filed, but who has lost his right thereto pending the suit, may have the bill retained for an award of damages." *Simon* v. *Schwachman*, 301 Mass. 573, 583–584, and cases cited. This principle is applicable even though the bill contains no prayer for damages. The bill in the present case contains a prayer for "such other and further relief as may be proper." Under such a prayer, damages may be awarded. See *E. Kronman, Inc.* v. *Bunn Bros. Inc.* 258 Mass. 562, 568. Indeed, a prayer for general relief is read into the bill. G. L. (Ter. Ed.) c. 214, § 12. *Hubrite Informal Frocks, Inc.* v. *Kramer*, 297 Mass. 530, 535.

2. The question for determination is whether the plaintiff is entitled to the relief of damages against the labor defendants, or any of them, springing "out of what . . . [the plaintiff] was entitled to when the bill was filed." See

*E. Kronman, Inc.* v. *Bunn Bros. Inc.* 258 Mass. 562, 568. The case was heard upon this issue. The decision of this issue depends upon whether on allegations of the bill established by proof these defendants were guilty of conduct unlawful against the plaintiff causing damage to the plaintiff. Since the case is before this court upon a report of the evidence, this court must reach its own conclusion, but in reaching its own conclusion findings of fact by the judge not inconsistent with each other, so far as they depend upon oral evidence are to be taken as true unless plainly wrong.

3. The plaintiff seeks to recover damages from the labor defendants for loss of rents of the apartment house, caused by delay in the completion of the elevator therein from April 8, 1940, to October 31, 1940, and delay in the completion of the front entrance. There was evidence of loss of rents resulting from delay in the completion of the elevator, and we assume in favor of the plaintiff that it sustained some loss of rents by reason of such delay, and proceed to consider whether such delay was caused in whole or in part by the wrongful conduct of the labor defendants or any of them. Whether any loss of rents resulted from delay in the completion of the front entrance to the building, apart from delay in the completion of the elevator, is conjectural upon the evidence. For the purpose of determining damages, it is unnecessary to consider the lawfulness or unlawfulness of conduct of the labor defendants that did not contribute to delay in the completion of the elevator.

4. The plaintiff contends that the trial judge at the hearing of this suit for the entry of the final decree was precluded, by a decree, entered by another judge of the Superior Court upon a finding of facts made by him including a finding that certain of the labor defendants "are actively preventing the fulfillment of the Otis Co. and the Tyler Co. contracts and unless restrained will continue to do so" and after a decree of a justice of this court upon a report under G. L. (Ter. Ed.) c. 214, § 9A (6), inserted by St. 1935, c. 407, § 4, that the case "does not involve or grow out of a labor dispute within the meaning of G. L. (Ter. Ed.) c. 149, § 20C, inserted by St. 1935, c. 407, § 1," from considering the mat-

ter of wrongful conduct of these labor defendants. This contention cannot be sustained. A judge hearing a suit on its merits is not required to order a permanent injunction or precluded from dismissing a bill by reason of a prior interlocutory decree ordering a temporary injunction even if such decree is not appealed from. Even if the decree of the justice of this court was final, the decree in the Superior Court for a temporary injunction was not a final decree and did not constitute an adjudication of the facts upon which it was based under the doctrine of res judicata. *New York Central & Hudson River Railroad* v. *T. Stuart & Son Co.* 260 Mass. 242, 248. And no doctrine of the "law of the case" or the "law of the trial" precluded the judge who heard the suit on its merits for the entry of a final decree from reconsidering the facts upon which the interlocutory decree was based. *Peterson* v. *Hopson*, 306 Mass. 597, 601–602.

5. In the reconstruction of its building, as the judge properly found, the plaintiff "was hiring such labor as it could by the hour from nonunion sources . . . and for such portions of the work as could not be so performed was employing contractors without reference to their status as union or nonunion." The work upon the elevator was covered in part by each of two contracts. One of these contracts was between the plaintiff and the defendant Otis Elevator Company. This contract was made on February 8, 1940, and was a contract that this defendant would "furnish and erect" the "elevator installation" according to certain specifications, which did not include furnishing and installing the elevator entrances or furnishing the elevator car. By this contract the defendant Otis Elevator Company agreed that the "apparatus shall be in complete running order by April 8, 1940," but the agreement for completion by that date was subject to the performance of other work, particularly to the hoistway being made ready for uninterrupted use by this defendant, and to the elevator car being furnished so that it could be installed by the defendant. The other contract was between the plaintiff and the defendant W. S. Tyler Company. This contract was made

on May 4, 1940, and was a contract that this defendant would furnish and install the elevator entrances and would furnish and deliver the elevator car, and that the "factory will ship materials three and one half weeks after receipt of approved details and the erection of the entrances will require eight working days and elevator entrances must be completed and erected in place by June 10, 1940."

6. With respect to the progress of the work, the judge found — and his findings were not plainly wrong — that it "appeared that for the performance of . . . [the contract of February 8, 1940, of the plaintiff with the defendant Otis Elevator Company, already referred to] the use of the hoistway was necessary for from four and a half to five weeks. The defendant Otis Elevator Company started manufacturing material within a week and no delay was caused in this respect. On March 27, 1940, word was received from Moskow that the hoistway was ready and *the work of installation could have been begun then or a little before but union men were not available, and continued unobtainable . . . until after injunctive relief was granted to the plaintiff on September 23, 1940 . . . .*" (Italics supplied.) The "hoistway was ready for the Otis Elevator Company to begin work on March 25, 1940." "The situation remained unchanged in respect to the Otis Elevator Company from March 25, 1940, to July 29, when the plaintiff filed this bill." The "filing of this bill resulted on September 23, 1940, in a preliminary injunction requiring the defendants to desist from interfering with the performance of the contracts with Otis Elevator Company and W. S. Tyler Company . . . and both were completed by October 31." "The contract [between the plaintiff and the defendant Otis Elevator Company] was to be completed by April 8, 1940, but the premises were not ready for the installation of elevators until March 25, and about four and a half weeks were required to complete it, making April 25 the earliest date upon which it could have been completed if there had been no difficulty in obtaining labor. On that date the elevator cage which was to be constructed by the W. S. Tyler Company, was not even contracted for, and when the contract was made on May 4,

completion was to be by June 10." The materials that, under the contract with the defendant W. S. Tyler Company, were "to be installed or erected" and were to "be shipped three and one half weeks after the receipt of approved details" "were fabricated and ready for shipment within the required period. They were not shipped because they could not be put in place until guide rails had been put in the elevator shaft by the Otis Elevator Company. There was no time when they could have been installed until their actual installation about October 7, 1940." It follows from these findings that delay in completion of the elevator before April 25, 1940, was not caused by the nonavailability of union men for the work of installing it, that is, by the nonavailability of members of Local #4, for members of that union were the only union men competent for that work.

7. The liability of the labor defendants or any of them for damages to the plaintiff for delay in the completion of the elevator depends, therefore, upon whether such delay after April 25, 1940, resulted wholly or in part from the nonavailability of members of Local #4 for that work and whether such nonavailability resulted from conduct of any or all of the labor defendants that was wrongful toward the plaintiff. Assuming in favor of the plaintiff that delay after April 25, 1940, in the completion of the elevator resulted wholly or in part from the nonavailability of members of Local #4 for work in installing the elevator, it is not shown that such nonavailability resulted from conduct of any or all of the labor defendants that was wrongful toward the plaintiff.

8. It does not appear that any member of Local #4 was bound by contract to enter the employment of the defendant Otis Elevator Company for work in installing the elevator. Clearly, no such member was under such a contractual obligation to the plaintiff. Nor was any such member under such a contractual obligation to the defendant Otis Elevator Company. There was no such contractual obligation apart from the "closed shop" agreement which the judge properly found existed between Local #4 and the de-

fendant Otis Elevator Company. The terms of such a collective agreement between an employer and a labor union may, in some circumstances, become a part of the contract of employment between the employer and an individual member of the labor union (*Whiting Milk Co.* v. *Grondin*, 282 Mass. 41, 44), but the "closed shop" agreement in the present case, so far as disclosed by the evidence, though purporting to restrict employment by the defendant Otis Elevator Company to members of Local #4 in the territory in and around Boston, contained no provision purporting to bind individual members of Local #4 to enter the employment of the defendant Otis Elevator Company. Consequently, it is unnecessary to consider whether the officers of Local #4 could have made such an agreement binding upon the individual members of Local #4. See *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382, 390–391. Compare *National Overall Dry Cleaning Co.* v. *Yavner, ante,* 434, 438. The members of Local #4, acting singly, therefore, were not precluded by any contract from refusing to enter the employment of the defendant Otis Elevator Company for the work of installing the elevator.

9. The existence of a contract by the defendant Otis Elevator Company with the plaintiff, to which members of Local #4 were not parties, to install the elevator imposed no greater duty upon members of Local #4, acting singly, to enter the employment of the defendant Otis Elevator Company than they would have had in the absence of such a contract, on the ground that failure or refusal of such a member to enter such employment would interfere with the performance of the contract. The parties to this contract could not by agreement between themselves impose upon members of Local #4 a duty, which did not exist in the absence of such contract, to enter the employment of the defendant Otis Elevator Company. Interference with the performance of this contract by the mere refusal of individual members of Local #4 to do what they were not bound to do, that is, to enter the employment of the defendant Otis Elevator Company, would not be actionable irrespective of the intention that prompted such refusal. *H. D.*

*Watts Co.* v. *American Bond & Mortgage Co.* 267 Mass. 541, 555–556. *Ross* v. *Wright*, 286 Mass. 269, 273–274.

10. Since no individual member of Local #4 was bound by contract to enter the employment of the defendant Otis Elevator Company for work in installing the elevator in the plaintiff's building, no such member, in the absence of circumstances hereinafter considered, had any duty to enter such employment or would be guilty of any wrong to the plaintiff in refusing to enter such employment. Each such member, not being bound by contract to enter such employment, had the right in the absence of special circumstances to refuse to enter such employment "on any ground pleasing to himself" (*Armstrong Cork & Insulation Co.* v. *Walsh*, 276 Mass. 263, 273), including the ground that non-union workmen were working on the building. "Every person has a legal right to dispose of his own labor as he wishes, and to work for whom he pleases. He may refuse to work with another because that person is distasteful to him, or for any other reason. *Plant* v. *Woods*, 176 Mass. 492, 498. *Pickett* v. *Walsh*, 192 Mass. 572, 582." *Mechanics Foundry & Machine Co.* v. *Lynch*, 236 Mass. 504, 505. This right is not in conflict with or subordinate to the right of the defendant Otis Elevator Company, or of the plaintiff, to a "free flow of labor" for employment by the defendant Otis Elevator Company for work on the plaintiff's building. The "right to a free flow of labor" is a right "to which every member of the community is entitled for the purpose of carrying on the business in which he or it has chosen to embark" (*Haverhill Strand Theatre, Inc.* v. *Gillen*, 229 Mass. 413, 418), that is, the right of a member of the community "at all times to hire in the labor market, and to retain in . . . [its] employment, such workmen as . . . [it] might choose." *Folsom Engraving Co.* v. *McNeil*, 235 Mass. 269, 277. See also *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382, 389; *Yankee Network, Inc.* v. *Gibbs*, 295 Mass. 56, 60. The right of a prospective employer to a "free flow of labor," however, is not a right to employ workmen who, for any reason, do not wish to enter such employment. It is merely a right to be free from unlawful

interference with the employment of workmen who wish to enter such employment. Apart from contract, the right of a prospective employer to hire an individual workman who does not choose to be hired is no greater than the correlative right of such individual workman acting singly to refuse to be hired.

11. No circumstances are shown that precluded individual members of Local #4 from refusing to enter the employment of the defendant Otis Elevator Company for work in installing the elevator in the plaintiff's building. It was not unlawful for such members to act through the defendant Kelley, the business agent of Local #4, in refusing to enter such employment. And they were not precluded from acting jointly in refusing to enter such employment. It is, of course, true that there "are things which it is lawful for an individual to do which it is not lawful for a combination of individuals to do." *Pickett* v. *Walsh*, 192 Mass. 572, 582. See also *Cornellier* v. *Haverhill Shoe Manufacturers' Association*, 221 Mass. 554, 561; *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 56. The basis for this principle is that a number of individuals acting in combination may have a power of harm or of coercion not possessed by any such individual acting singly. See *Neustadt* v. *Employers' Liability Assurance Corp. Ltd.* 303 Mass. 321, 325. The gist of the wrong in concerted action where individual action would be lawful is conspiracy, and the fundamental question is whether there was a combination which "overstepped legal bounds in the object sought or the means used to carry it out." *Robitaille* v. *Morse*, 283 Mass. 27, 31. But a refusal by the defendant members of Local #4 to enter the employment of the defendant Otis Elevator Company was conduct "such as any individual might employ in his business with impunity even though damage might result thereby to another . . . unless the defendants, acting jointly, had some unlawful object in view" in such refusal. *Neustadt* v. *Employers' Liability Assurance Corp. Ltd.* 303 Mass. 321, 325. See also *Foster* v. *Shubert Holding Co.* 316 Mass. 470, 475. It is not shown that the members of Local #4 had any unlawful object in view in refusing to enter the employment of the defendant Otis

Elevator Company. The judge found that there was no "conspiracy," which imports that there was no combination among members of Local #4 for the object of injuring the plaintiff. And this finding was not plainly wrong. No such direct intention on the part of members of Local #4 was shown. Nor was it shown that injury to the plaintiff was the natural and necessary consequence of the refusal of members of Local #4 to enter such employment. See *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45. It was not shown that the plaintiff was prevented by such refusal from employing directly or through contractors nonunion workmen for the job of remodelling the apartment house. It was not shown that the members of Local #4 by refusing to enter the employment of the defendant Otis Elevator Company for work on the plaintiff's building were attempting to coerce the plaintiff to carry on the remodelling of this building as a closed union job. Furthermore, it was not shown that the members of Local #4 were attempting to create a monopoly in themselves of the work of installing elevators. The plaintiff does not contend that there was in fact any such monopoly. The judge's finding with respect to "members of that union [Local #4] being the only craftsmen competent for that work" obviously refers to union workmen. His finding that "there was no . . . monopoly" as applied to work in installing the elevator was not plainly wrong. It was not shown that nonunion workmen were not available for this work, and there was evidence that there were concerns employing nonunion workmen with whom, so far as appears, the plaintiff might have contracted for the installation of the elevator, and it is not shown that the plaintiff was coerced by members of Local #4 to make a contract for this work with the defendant Otis Elevator Company or with any other concern employing only union workmen.

12. The plaintiff was free to contract for the installation of the elevator with any concern willing to enter into a contract for that work. It elected to contract with the defendant Otis Elevator Company, but the fact that it so elected did not impose upon members of Local #4 any duty to enter

into employment under that contract if for any reason they did not wish to do so. And it was not shown that such members in refusing to enter into employment for work under this contract were acting in combination for the object of injuring the plaintiff rather than in the exercise of their privilege to refuse to enter into any employment that, for any reason, was not pleasing to them. In the absence, as here, of an intention on the part of the members of Local #4 to injure the plaintiff, refusal by them even acting jointly to enter the employment of the defendant Otis Elevator Company for work under its contract with the plaintiff, though resulting incidentally in damage to the plaintiff, was not a wrong to the plaintiff and did not constitute a boycott. See *Robitaille* v. *Morse*, 283 Mass. 27, 32. An "essential element of the boycott is intentional injury to somebody." *Hoban* v. *Dempsey*, 217 Mass. 166, 170.

13. The judge found "that whatever trouble or delay was occasioned on the job was due to the adherence of the organizations of which they [the labor defendants] were members to a general policy not to allow union labor to work on nonunion or open jobs." This finding, as applied to members of Local #4, imports that their refusal to enter the employment of the defendant Otis Elevator Company — so far as they did so by authorizing or acquiescing in the refusal of the defendant Kelley, the business agent of Local #4, to furnish members of Local #4 for such employment — was for the object of adhering to a general policy and not for the object of injuring the plaintiff or anyone. This "general policy" as applied to Local #4 was a policy that this organization would not furnish members thereof for "work on nonunion or open jobs," but does not include a policy of coercing such members to refuse to work on such jobs. The finding that Local #4 adhered to this "general policy" does not import that it or its members coerced any of its members to refuse to work on any such job. And the evidence does not show such coercion of any members of Local #4 to refuse to enter the employment of the defendant Otis Elevator Company for work in installing the elevator in the plaintiff's building. It is urged by the plaintiff that there

was such coercion by reason of provisions in the constitution and by-laws of the council and in the constitution and by-laws of Local #4, among the latter a provision that any officer or member "who violates the trade rules of the locality in which he is working . . . shall be fined, suspended or expelled, as the organization may decide." But even if these provisions would be broad enough to apply to members of Local #4 who worked on nonunion or open jobs, it is not shown that disciplinary action thereunder was taken or threatened against any member of Local #4 sought to be employed for work on the elevator in the plaintiff's apartment house. *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382, 392. The present case differs in this respect from *Martell* v. *White*, 185 Mass. 255, *L. D. Willcutt & Sons Co.* v. *Driscoll*, 200 Mass. 110, 112, *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 70–72, *Armstrong Cork & Insulation Co.* v. *Walsh*, 276 Mass. 263, 273, and *Yankee Network, Inc.* v. *Gibbs*, 295 Mass. 56, 58, 60–61. So far as appears the refusal of members of Local #4 to enter the employment of the defendant Otis Elevator Company was voluntary and was not for the object of injuring the plaintiff or anyone.

14. From the fact that there was no "conspiracy," as the judge properly found, it follows that there was no "strike." Moreover, since the members of Local #4 were not employees of the defendant Otis Elevator Company, obviously they did not cease to work for this defendant upon its contract with the plaintiff or upon any other work for this defendant and did not combine to cease to do such work. The basic element of a "strike" — the concerted cessation of work by employees for their employer — therefore was absent (see *Simon* v. *Schwachman*, 301 Mass. 573, 576; *Jeffery-De Witt Insulator Co.* v. *National Labor Relations Board*, 91 Fed. [2d] 134, 138; *C. G. Conn, Ltd.* v. *National Labor Relations Board*, 108 Fed. [2d] 390, 396–397; *The Point Reyes*, 110 Fed. [2d] 608, 609–610; *Uden* v. *Schaefer*, 110 Wash. 391, 394, 11 Am. L. R. 1001, 1003; Restatement: Torts, § 797, comment a) and it is not necessary to consider other essential elements of a "strike." The situation in this respect is different from that in *Yankee Network, Inc.* v. *Gibbs*, 295

Mass. 56, for example, where there was a concerted cessation of work by employees for their employer for the purpose — which was accomplished — of preventing the carrying out of a contract of employment between the employer and another employee and of preventing this employee from working for the employer.

15. It follows from what has been said that the plaintiff is not entitled to recover damages from any of the members of Local #4 referred to in the bill solely by description. Since it is not shown that members of Local #4, described in the bill merely as such members, even acting jointly or jointly with other members of Local #4 named in the bill, acted wrongfully toward the plaintiff, it is not necessary to consider as to any individual member referred to in the bill merely as such whether he participated in, authorized or ratified such joint action. See *Quinton's Market, Inc.* v. *Patterson*, 303 Mass. 315, 320–321.

16. Two members of Local #4 are referred to in the bill, as amended, by name as defendants — Edward Lanphier and Edward I. Kelley, "individually and as they are respectively the financial secretary and the business representative of Local #4 of the International Union of Elevator Constructors." No facts are shown that render either of these defendants liable in damages to the plaintiff by reason of the nonavailability of members of Local #4 for the work of installing the elevator in the plaintiff's apartment house under the contract of the defendant Otis Elevator Company with the plaintiff for such installation.

17. The duties of the defendant Kelley as the business agent of Local #4 as prescribed by the by-laws of Local #4 included the duties to "have a general supervision over the affairs of the organization," to "care for the interests of the organization in their dealings with other unions and with central bodies," to "investigate all complaints made to him and act in accordance with the instructions of the organization," to "make a written report at each regular meeting, showing the condition of trades," to "endeavor by all honorable means to secure employment for members out of work," and to "endeavor to visit all work in course of erec-

tion and give instructions." This defendant testified that it was one of his functions "to be in touch with the representatives of the various elevator manufacturers as jobs proceed," and that he is the man "who personally is in touch with the manufacturers with respect to the supply of men." Even if it was this defendant's practice to furnish elevator manufacturers with members of Local #4 for employment, it is not shown that he had any authority from such members to furnish any individual member to the defendant Otis Elevator Company for employment that such member did not wish to enter. See *W. A. Snow Iron Works, Inc.* v. *Chadwick,* 227 Mass. 382, 391.

The judge was not plainly wrong in finding that the "construction manager [of the defendant Otis Elevator Company], Mr. Brown, [before the contract between the plaintiff and the defendant Otis Elevator Company was made on February 8, 1940] held a telephone conversation with the defendant Kelley, in which Brown inquired if he could get men for the job and was told that if any union crafts were permitted on the job by the Building Trades Council, elevator mechanics could work there," and that on "March 27, 1940, word was received from Moskow that the hoistway was ready and the work of installation could have been begun then or a little before but union men were not available, and continued unobtainable, after frequent conferences with Kelley, until after injunctive relief was granted to the plaintiff on September 23, 1940, because at no time before that date did the Building Trades Council give its sanction to any of its affiliated unions for union men to work on the plaintiff's job" (according to the evidence, the conferences with Kelley herein referred to were conducted or at least participated in by Brown), and that the "situation remained unchanged in respect to the Otis Elevator Company from March 25, 1940, to July 29, when the plaintiff filed this bill. Efforts were made both by Kelley and Otis Elevator Company to get permission from the Building Trades Council to use union men for the job, but that body continued in its refusal, although it may be inferred that if it could have been satisfied that there was no further work to be done

by nonunion labor, permission might have been forthcoming."

It is not shown that the defendant Kelley was guilty of any wrong to the plaintiff even if this defendant's conversation and conferences with representatives of the defendant Otis Elevator Company amounted in substance to a refusal by him to furnish members of Local #4 for employment by the defendant Otis Elevator Company for the performance of work under its contract with the plaintiff. It is not shown that the defendant Kelley owed any duty to the plaintiff or to the defendant Otis Elevator Company to furnish members of Local #4 for employment for work in installing the elevator since it is not shown that he had authority from such members to furnish them, and it is not shown that refusal to furnish such members was in pursuance of a conspiracy to injure the plaintiff or constituted an unlawful interference with employment by the defendant Otis Elevator Company of members of Local #4. The refusal of the defendant Kelley to furnish members of Local #4 for work in installing the elevator, since he had no authority from them to furnish them for such employment, did not constitute an unlawful interference by him with employment by the defendant Otis Elevator Company of members of Local #4 for this work, even if it is not shown that he reported the application of the defendant Otis Elevator Company for members of Local #4 for such employment or that every member of Local #4 authorized or ratified such refusal. It appears, however, by uncontradicted evidence, which we accept as true, that he made comments on the situation on the job at a meeting of Local #4, and that the sense of Local #4 was in accordance with the policy of the council that members of Local #4 should not work upon the job.

Furthermore, it is not shown that the defendant Kelley was guilty of any wrong to the plaintiff by participating in the action of the council or its adjustment board in refusing to sanction the employment of members of Local #4 for this work. It appears that at a meeting of the adjustment board he voted in favor of sanctioning such employment but was outvoted. The judge found properly that efforts were made

by him to get permission from the council to use union men for the job.

18. It is not shown that the defendant Edward Lanphier was guilty of any wrong toward the plaintiff. It is not shown that as financial secretary of Local #4 he had any duty with respect to furnishing members of Local #4 for employment nor is it shown that he participated in the refusal to do so except as a member of Local #4 and it is not shown that he participated as such member. It is shown merely that he was present at a meeting of Local #4 in which the situation was commented on by the defendant Kelley, but it is not shown that he participated in the discussion of the situation at this meeting in which "the sense of . . . Local #4 was in accordance with the policy of the Building Trades Council."

19. The other labor defendants are "Frank O'Toole, Ernest A. Johnson and Edwin E. Graves [for whom his administratrix has been substituted as defendant] . . . individually and as they are respectively the president, the secretary-treasurer, and the general agent of the . . . [council] . . . and all the other officers and members thereof." No one of these defendants is liable in damages to the plaintiff.

20. The finding of the judge that there was no "conspiracy" imports that there was no conspiracy in which the officers and members of the council, referred to in the bill merely by such description and not by name, participated to injure either the plaintiff or the defendant Otis Elevator Company by rendering members of Local #4 unavailable for work under the contract for installing the elevator upon the plaintiff's premises and was not plainly wrong. In the absence, as here, of any conspiracy, the members of Local #4 were free to refuse to enter the employment of the defendant Otis Elevator Company for such work for any reason that they pleased including the reason that such employment was not sanctioned by the council, and were free to leave to the council the determination whether members of Local #4 should enter such employment. It is not shown that any member or officer of the council, referred to in the bill as

such and not by name, took any action with respect to the employment of members of Local #4 by the defendant Otis Elevator Company except as some of them voted at a meeting of the adjustment board of the council not to sanction employment of members of Local #4 for such work. It is not shown that any such member or officer of the council by so voting at a meeting of the adjustment board of the council was guilty of any wrong to the plaintiff or to the defendant Otis Elevator Company in the absence, as here, of any conspiracy to injure the plaintiff or the defendant Otis Elevator Company. This adjustment board was a committee of the council subject to the instructions of the council, and all its decisions and acts were subject to appeal to the council. It is not shown that any such appeal was taken by members of Local #4. It is not shown that the adjustment board had authority to compel by disciplinary action members of Local #4 to comply with its vote by not entering the employment of the defendant Otis Elevator Company on the plaintiff's job or attempted to compel such compliance.

21. The defendant O'Toole is not liable in damages to the plaintiff. He was the business agent of the Plasterers' Union, a member of the adjustment board and member and president of the council. Though he attended some meetings of the adjustment board, it is not shown that he was present at the meeting at which it voted not to sanction employment of members of Local #4 for work under the contract for installing the elevator upon the plaintiff's premises. This defendant is not liable in damages to the plaintiff by reason of this action of the adjustment board in which he is not shown to have participated. It appears that the policy of the adjustment board with respect to the employment of union labor upon the plaintiff's job was reported to the council and discussed by it at a meeting or meetings at which this defendant was present, but it is not shown that he individually or as a member of the council took any action to prevent the employment of members of Local #4 by the defendant Otis Elevator Company for work on the plaintiff's job. Furthermore, the finding of the judge was not plainly wrong

that the council "was composed of representations from the several unions concerned with the building trade and appears to have general supervision and control of matters affecting that trade but with no direct disciplinary authority." It is not shown that the council or this defendant attempted to exercise any disciplinary authority over members of Local #4 with respect to their entering the employment of the defendant Otis Elevator Company under its contract with the plaintiff. In the absence, as here, of conspiracy to injure the plaintiff or the defendant Otis Elevator Company, it is not shown that this defendant was guilty of any wrong to either of them.

22. The defendant Ernest A. Johnson is not liable in damages to the plaintiff. This defendant was a member of the adjustment board and a member and secretary-treasurer of the council. The case against Johnson is not different in substance from the case against the defendant O'Toole unless by reason of the fact that the defendant Johnson was present at the meeting of the adjustment board at which it was voted not to sanction the employment of members of Local #4 for work under the contract of the defendant Otis Elevator Company with the plaintiff in installing the elevator although it is not shown that the defendant Johnson voted either way upon this question. Even if his presence at the meeting could be regarded as acquiescence in this vote, he was not guilty of any wrong to the plaintiff or to the defendant Otis Elevator Company in such acquiescence in the absence, as here, of any conspiracy in which he participated to injure either of them.

23. The defendant Edwin E. Graves, or his administratrix, is not liable in damages to the plaintiff. There is no basis in the facts shown for liability. This defendant was the general agent of the council whose duty it was "to note and report the conditions in the building and construction industry relating to the erection, alteration, demolition and repair of all work." He was a member of the adjustment board. It does not appear that he was a member of the council. The judge found properly that very "early in the progress of the work, the defendant Graves visited the

premises and learned from Moskow that it was to be an 'open' job, told him in some form of words that union men would not work on it, which was in accordance with the fixed policy of the union organizations not to permit union men to work on nonunion jobs," and "Graves subsequently reported his conversation to the Building Trades Council." Apparently this conversation occurred before the contract between the plaintiff and the defendant Otis Elevator Company was made. So far as the employment of nonunion workmen on the work of remodelling the building is concerned, this statement of the defendant Graves to Moskow at most did not go beyond — if it went as far as — an attempt to persuade the plaintiff to carry on the work of remodelling the building as a closed union job excluding nonunion workmen from employment thereon. Such an attempt by the defendant Graves, whether as a mere volunteer or as the authorized or apparent spokesman for all members of the labor unions affiliated with the council, including Local #4, or for any more limited group, in which there was no element of coercion or attempted coercion, to persuade the plaintiff to carry on the work as a closed union job, was not a wrong to the plaintiff. There was no coercion or attempt to coerce the plaintiff in this conversation unless by reason of the statement by the defendant Graves to the effect that union workmen would not work on the job if nonunion workmen were employed thereon. While this statement might tend to influence the plaintiff not to employ nonunion workmen on the job, it cannot fairly be regarded as a threat to interfere with the employment of nonunion workmen thereon. It was not a wrong to the plaintiff for the defendant Graves to report this conversation to the council. No coercion by the defendant Graves of members of Local #4 not to enter the employment of the defendant Otis Elevator Company on the plaintiff's job is shown. In the absence, as here, of a conspiracy to injure the plaintiff or the defendant Otis Elevator Company in which the defendant Graves participated, it is not shown that the defendant Graves was guilty of any wrong to either of them.

24. It follows that there was no error in dismissing the bill as against the labor defendants. This conclusion rests upon the finding of the judge, which is not plainly wrong, "I find that there was no strike; that there was no conspiracy or monopoly and that whatever trouble or delay was occasioned on the job was due to the adherence of the organizations of which they were members to a general policy not to allow union labor to work on nonunion or open jobs." We interpret this finding to mean that the refusal to work was not the result of or in furtherance of any combination to compel the plaintiff to hire only persons who were members of some trade union. This decision is not intended to impair the authority of cases holding certain boycotts illegal.

Second. Damages against the defendant Otis Elevator Company.

1. The plaintiff seeks to recover damages against the defendant Otis Elevator Company for loss of rents resulting from delay in completion of the performance of its contract for installation of the elevator.

2. By this contract, previously described herein, the defendant Otis Elevator Company agreed to install an elevator and the plaintiff agreed to do certain things including furnishing an elevator car and preparing a legal hoistway, and agreed to complete all of this work in such time as not to delay this defendant's work. The defendant agreed that the apparatus should be in complete running order by April 8, 1940.

3. It is clear that the apparatus was not in running order by that time. Indeed, it appears not to have been completed until sometime in October, 1940. To what extent this delay was excused by the failure of the plaintiff to perform its part of the contract need not be considered for the contract provided that the defendant Otis Elevator Company "shall not be held responsible or liable for any loss, damage, detention or delay caused by accidents, strikes, lockouts, fire, explosion, theft, lightning, windstorm, earthquake, floods, storms, riot, civil commotion, malicious mischief, Act of God, or by any cause beyond its reasonable control, whether or not the same is herein specified, and in any event it shall

not be liable for consequential damages." We need not consider the other defences urged by the defendant for the only damages proved — the loss of rents — were consequential damages within the meaning of the contract.

4. The plaintiff without objection introduced a copy of this contract at the hearing and it was before the judge in its entirety including the provision that the defendant Otis Elevator Company "in any event . . . shall not be liable for consequential damages" although this particular provision of the contract was not expressly pleaded. The rule of damages in an action for breach of contract is that the plaintiff "is entitled in general to damages sufficient in amount to compensate him for the loss actually sustained by him, and to put him in as good position financially as he would have been in if there had been no breach and he had completed the contract. He may not insist upon extraordinary or unforeseen elements of damage, but only such as flow according to common understanding as the natural and probable consequences of the breach and such as may be presumed to have been in the contemplation of the parties at the time the contract was made." *Bucholz* v. *Green Bros. Co.* 272 Mass. 49, 54. See also Restatement: Contracts, § 330; Williston on Contracts (Rev. ed.) § 1356; *Hadley* v. *Baxendale,* 9 Exch. 341, 354–355. In no event is recovery permitted of damages not resulting from the breach of the contract, that is, not the consequences of such breach. On the other hand, it is apparent that the agreement that the defendant shall not be liable for consequential damages is not to be interpreted as meaning that the defendant shall not be liable for any damages whatsoever, and this conclusion is supported by the provision of the contract relieving the defendant from liability for damages resulting from various named causes. The natural interpretation of "consequential damages" as used in the contract is that it does not refer to damages that "flow according to common understanding as the natural and probable consequences of the breach," that is, those arising naturally "according to the usual course of things, from such breach of contract itself," *Hadley* v. *Baxendale,* 9 Exch. 341, 354, "usual" damages

(see Williston on Contracts [Rev. ed.] § 1356), sometimes referred to as "general" damages, but that it refers to damages that "may be presumed to have been in the contemplation of the parties at the time the contract was made" by reason of special circumstances known to the parties though such damages do not "flow according to common understanding as the natural and probable consequences of the breach," sometimes referred to as "special" damages. The case of *Goddard* v. *Barnard*, 16 Gray, 205 (citing *Hadley* v. *Baxendale* referred to above), denying recovery of special damages was decided on the ground that the contract itself, considered in the light of the circumstances known to the parties when it was made, showed that the parties did not contemplate the recovery of special damages for breach. See also *Swift River Co.* v. *Fitchburg Railroad*, 169 Mass. 326. *Manning* v. *Fitch*, 138 Mass. 273, is in accord with this principle although it was there held that evidence of circumstances known to the parties when the contract was made was held admissible on the issue of damages.

5. We think that the provision against liability for "consequential" damages, naturally interpreted, provides against liability for damages that do not arise "according to the usual course of things, from such breach of contract itself," that is, against liability for "special" damages that are the consequences of special circumstances known to the parties at the time the contract was made. See *Washington & Old Dominion Railway* v. *Westinghouse Electric & Manuf. Co.* 120 Va. 620.

6. Under the provision so construed, damages for the loss of rents of apartments in the apartment house in which the elevator was to be installed — the only damages shown — are not recoverable since such damages do not arise "according to the usual course of things, from such breach of contract itself" but can arise only as the consequence of circumstances known to the parties.

Third.  Damages against the defendant W. S. Tyler Company for breach of its contract of May 4, 1940, hereinbefore referred to, to furnish and install the elevator entrances and

furnish and deliver the elevator car, and recovery by this defendant under its counterclaim of the contract price from the plaintiff.

1. The contract between the plaintiff and the defendant W. S. Tyler Company was for the contract price of $1,475. Earlier in this opinion this contract has been described, and the findings of fact with respect to performance thereof have been set forth. This contract provided that the "factory will ship materials three and one half weeks after receipt of approved details and the erection of the entrances will require eight working days and elevator entrances must be completed and erected in place by June 10, 1940."

2. The plaintiff is not entitled to recover damages from this defendant for delay in completing the installation of the elevator from June 10, 1940, to October 7, 1940, when it was actually installed. According to the findings of the judge, which are not plainly wrong, it could not have been installed until about October 7, 1940. This impossibility of installing the elevator until October 7, 1940, resulted from the fact that it could not be so installed until guide rails had been put in the elevator shaft by the Otis Elevator Company under its contract with the plaintiff. Such impossibility was not caused by the defendant W. S. Tyler Company, and this defendant was not liable in damages for the resulting delay. And the resulting delay did not preclude recovery by this defendant under the counterclaim for the contract price. *Wallis* v. *Wenham*, 204 Mass. 83, 89. *Ravage* v. *Johnson*, 316 Mass. 558, 562. See also *Suburban Land Co. Inc.* v. *Brown*, 237 Mass. 166. And, as the judge found, the delay by this defendant in delivering the materials for the elevator caused no delay in the completion thereof. The contract, however, contained an express provision for delivery of the materials at a fixed time. Though they were then fabricated and ready for shipment, they were not then shipped. The questions, therefore, arise whether the plaintiff is entitled to damages for delay in such shipment and whether such delay precluded recovery by this defendant of the contract price. The plaintiff cannot recover damages in this suit for nondelivery of the materials at a fixed time since, if for no other

reason, it "suffered no damage from the nondelivery" as the judge found, and this finding was not plainly wrong. And this defendant is not precluded by such nondelivery from recovering the contract price for, on the facts found by the judge, which are not plainly wrong, the plaintiff acquiesced in such nondelivery, whether such acquiescence is to be regarded as a waiver of this provision of the contract or a modification of the contract. The parties went to hearing on the merits without any question being raised as to the form of the counterclaim, and no such question and no question of variance have been raised or are now argued. This defendant is not precluded from recovering damages under its counterclaim on either of these grounds.

Fourth. There was no error in the failure to grant a permanent injunction. The work on the apartment house was completed before the hearing on the merits, and the evidence as to other or prospective operations by the plaintiff, even if admitted and believed, did not show such facts as entitle the plaintiff to a permanent injunction for the protection of such building operations.

Fifth. No question of the exclusion or admission of evidence is argued by the plaintiff, the appellant here, and we treat such questions as waived. If the plaintiff has saved any exception to the reading by the trial judge of the decree of a justice of this court and his rulings and order for a decree incorporating the report of the judge of the Superior Court under G. L. (Ter. Ed.) c. 214, § 9A (6), inserted by St. 1935, c. 407, § 4, upon an application for a temporary injunction, including the facts found by the trial judge which are made a part of this report, the plaintiff has not argued it and we treat it as waived.

It follows that the final decree must be affirmed with a single bill of costs of this appeal against the plaintiff for the labor defendants; also with costs of this appeal against the plaintiff for the defendant Otis Elevator Company, and with costs of this appeal against the plaintiff for the defendant W. S. Tyler Company.                        *So ordered.*

Mr. Justice Spalding concurs in the result.