Azubuko CHUKWU, Plaintiff,

v.

**BOARD OF DIRECTORS BRITISH AIRWAYS, Defendant.**

93 Civ. 12828 (MEL).

United States District Court,
D. Massachusetts.

Jan. 30, 1996.

Azubuko Chukwu, Boston, MA, pro se.

Diane Westwood Wilson, Condon & Forsyth, New York City, John J. Davis, Morrison, Mahoney & Miller, Boston, MA, for Defendant.

LASKER, District Judge.

■ This opinion revisits an issue that remained unresolved by an earlier 12(b)(6) motion: whether Chukwu Azubuko's breach of contract claim against British Airways is preempted by § 1305 of the Airline Deregulation Act ("ADA"). Section 1305 forbids states from enacting or enforcing any law related to air carrier rates, routes or services. 49 U.S.C.App. § 1305(a)(1). In its recent decision in *American Airlines v. Wolens,* —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Supreme Court concluded that it did not read "the ADA's preemption clause ... to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airlines' breach of its own, self-imposed undertakings." *Id.* at ——, 115 S.Ct. at 824. In an earlier opinion, this Court found that, in light of *Wolens,* whether Azubuko's breach of contract claim was permitted under the ADA could not be decided without evidence as to the terms of Azubuko's contract with BA.

### I.

On July 7, 1993, Azubuko used a credit card travel service to purchase a BA ticket for Ifeanyi Azubuko, who was his brother and business partner, to fly from Lagos, Nigeria to Grand Cayman. Ifeanyi intended to travel to Grand Cayman to continue his education. When Ifeanyi arrived at the BA ticket counter in Lagos on the same day, July 7, he was not permitted to board the plane.

According to Azubuko, BA told Ifeanyi that "your brother [Chukwu Azubuko] made payment and requested for a refund." (Pl.'s Opp. to Undisputed Facts at 4). However, Azubuko claims that when Azubuko called the BA "800" number to inquire about Ifeanyi's boarding problems, he was told that

Ifeanyi was denied boarding because he lacked proper documentation, i.e., a visa. BA contends that Ifeanyi was denied boarding solely because he did not have a visa. Azubuko admits that his brother did not have a visa at the time he arrived at the BA counter, but argues that a visa is not necessary if a passenger "travel[s] to another country and stop[s] over in the United States [as long as] the waiting time does not exceed eight hours." (Pl.'s Opp. Mem. at 10).

BA has refunded the full amount of the prepaid ticket price purchased by Azubuko.

### II.

BA presently moves for summary judgment on three grounds: First, that despite *Wolens,* Azubuko cannot pursue his state contract claims because they are preempted as a matter of law by § 1305 of the Federal Aviation Act. Second, that even if the claims are not preempted, he is not entitled to relief because BA has already refunded to him the full price of the ticket he purchased and therefore compensated him for any damages he may have suffered. Finally, BA argues that Azubuko is not entitled to relief in any event because he is not the real party in interest.

Although it is difficult to make sense of Azubuko's opposition memorandum, his principal argument appears to be that BA undertook a private contractual obligation to Ifeanyi to transport him to the United States and breached it by denying him boarding.[1]

### II.

The Airline Deregulation Act provides, in relevant part:

> [N]o State ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier....

49 U.S.C. App. § 1305(a)(1) (revised without substantive change, 49 U.S.C.A. § 41713(b)(1)). Until recently, § 1305 was

---

1. Azubuko never articulates which private obligation was breached by BA: that is, whether he means BA breached a written contract as set forth in Ifeanyi's airline ticket or whether BA breached an oral agreement to transport Ifeanyi.

read by some courts to preempt both contract and tort claims that related to "rates, routes and services." *See, e.g., Cannava v. USAir,* 1993 WL 565341, 1993 U.S.Dist. LEXIS 16726 (D.Mass. Jan. 7, 1993).

In *American Airlines v. Wolens,* — U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Supreme Court addressed the scope of the preemptive provisions under § 1305. In *Wolens,* plaintiffs, members of American's frequent flyer program, sued American for breach of contract and for consumer fraud under the Illinois Consumer Fraud Act. *Id.* at ——, 115 S.Ct. at 822. The Supreme Court ruled that § 1305 preempted plaintiff's consumer fraud claim, since the Illinois Act effectively "police[d] the marketing practices of the airlines." *Id.* at ——, 115 S.Ct. at 823.

However, the Court held further that the "ADA permits state-law-based court adjudication of routine breach of contract claims" stating that:

> [T]erms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enact[ment] of any law, rule, regulation, standard or other provision having the force and effect of law within the meaning of § 1305.... A remedy confined to a contract's terms simply holds parties to their agreements—in this instance, to business judgments an airline made public about its rates and fares.

*Id.* at ——, 115 S.Ct. at 824. This holding was limited by a significant caveat that:

> The distinction between what the State dictates and what the airline itself undertakes confines courts, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Id.* at ——, 115 S.Ct. at 826.

On the present motion, BA claims that Azubuko's breach of contract claim is preempted by § 1305 as a matter of law because Azubuko's claim arises from a "service," which BA asserts "Congress clearly intended to forbid states from regulating." This argument appears to be an invitation to

hold that even under *Wolens* the claim of a passenger denied the right to board is preempted. The invitation is unacceptable without the guidance of higher authority since, as we read *Wolens,* it does not appear to limit the type of contracts exempted from the ADA based on whether they involve "rates, routes or services."

BA further argues that it had no contract with Azubuko because it undertook no "privately ordered obligations" outside the terms of the British Airways Tariffs. BA's point on this issue is well-taken. Because of the special status of tariffs in transportation law and the indisputable need for uniform application of them, it appears reasonable to conclude that *Wolens* did not intend to exclude them from application of the ADA preemption provisions. However, this need not be decided because, as indicated below, even if there were a non-preempted contract between BA and Azubuko, BA did not breach its obligations.

Tariff provisions are binding on a passenger, even if the passenger did not know about them, so long as they do not offend public policy. *Fontan–de–Maldonado v. Lineas Aereas Costarricenses,* 936 F.2d 630, 631 (1st Cir.1991). Azubuko makes no claim that the BA tariff provisions were unreasonable, and on their face they appear to be reasonable. Tariff No. 45 authorized BA to deny boarding to a passenger if it made a good faith determination that the passenger's travel documents were legally insufficient. Tariff No. 45 provides, in relevant part:

> Each passenger desiring transportation across any international boundary will be responsible for obtaining all necessary travel documents and for complying with all necessary government regulations.... No liability shall attach to carrier if carrier in good faith determines that what it understands to be applicable law, government regulation, demand, order or requirement, requires that it refuse and it does refuse to carry a passenger.

(Def.Ex.K). Azubuko does not dispute that Ifeanyi did not hold a visa, but claims that he was not required to hold one if his stay in the United States was under eight hours.

Azubuko is correct that aliens seeking to enter the United States without a visa may do so under the Transit Without Visa pro-

gram ("TWVP") if they, among other things, continue their journey within eight hours of arrival in the United States. *See* 8 C.F.R. § 214.2(c)(1) (1993). However, according to the information on Ifeanyi's ticket, Ifeanyi was scheduled to land in New York on July 8 at noon, travel on to Miami three hours later, and then stay in Miami for almost twenty-four hours before departing for Grand Cayman on July 9. (Copy of Ticket at Def. Ex. I).

Accordingly, Ifeanyi's stay in the United States would in fact have been longer than eight hours, and BA was therefore justified in refusing to permit him to board without a visa.

■ Moreover, although there is a factual dispute as to whether BA told Ifeanyi that he could not board because Azubuko requested a refund, assuming a BA representative did make such a statement, Azubuko's recovery for breach of contract was defined and limited by BA's Tariffs. Tariff No. 25 limited the damages payable to a passenger who has been denied boarding to "recovery of the refund value of the ticket." (Tariff No. 25, Def, Ex. J), and Tariff No. 55 provides that BA "shall not be liable in any event for any consequential or special damages." (Def.Ex.K). Azubuko concedes that BA has refunded him the full purchase price of the ticket.

In sum, BA is not liable for breach of contract for any of the promises or limitations specified by its tariffs and in any event is not liable to Azubuko for further damages.

■ Nor is Azubuko entitled to recovery under Massachusetts contract law. Although Azubuko claims "I am not seeking any relief; the money was refunded to me without a grain of request from me," he nonetheless demands two million dollars for his and Ifeanyi's "unreasonable psychological traumatic experiences." (Compl. at 2). Since BA did not breach any contract with Azubuko, it is not liable to him. However, under Massa-

chusetts contract law, damages not within the contemplation of the parties at the time the contract was made are not allowable and Azubuko has shown no other basis for his claim. *See generally Boylston Housing Corp. v. O'Toole,* 321 Mass. 538, 562, 74 N.E.2d 288 (1947) (when contract is breached, courts look to whether the damages sought are the "probable consequences of the breach"). *Chestnut Hill Dev. Corp. v. Otis Elevator Co.,* 739 F.Supp. 692, 701 (D.Mass. 1990) (plaintiff cannot recover consequential damages, unless such damages are "in the contemplation of the parties at the time the contract was made").

■ Finally, although BA's summary judgment motion is granted based on the grounds discussed above, there is merit to BA's contention that Azubuko's claim should be dismissed because he is not the real party in interest under Rule 17(a) of the Federal Rules of Civil Procedure. While Azubuko is the real party to the extent of the right to receive a refund for the purchase price of the airline ticket, that has already been done. As for Azubuko's standing regarding Ifeanyi, Azubuko has presented no authority to support his right to sue on behalf of his brother.

For the foregoing reasons, BA's motion for summary judgment is granted, and the complaint is dismissed.

It is so ordered.