GREAT AMERICAN INDEMNITY COMPANY *vs.* ALLIED FREIGHT-WAYS, INC., & others.

Suffolk. November 8, 1949. — April 3, 1950.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Assignment. Receiver. Lien. Equity Pleading and Practice,* Appeal.

An assignment, by a motor carrier to a creditor, as security, of all the carrier's interest in and "any and all moneys . . . that may become due" under a valid executory contract previously made by the carrier with a second carrier for a sale of the first carrier's "operating authority" to the second carrier for a certain price payable after approval of the transaction by the interstate commerce commission, constituted an effective present transfer to the assignee of a security title to the anticipated proceeds of such contract; and thereafter, upon the appointment of a receiver of the first carrier and the receiver's completion of the contract and receipt of the proceeds thereof, the assignee acquired the position of a secured creditor of the first carrier with a lien on such proceeds to the extent of the assignee's claim.

An alleged lien of the United States for taxes on property in the hands of a receiver should not be adjudicated, in the absence of the United States as a party, upon a petition directed solely to establishing the position of one of the creditors as a secured creditor.

The expenses of a receivership of a debtor should not be made a burden on the security title of a secured creditor to money realized by the receiver through his carrying out of a contract of the debtor with a third person following an assignment by the debtor to the creditor of all interest in and "any and all moneys . . . that may become due" under the executory contract.

No error in the denial of a motion to dismiss an appeal in a suit in equity was shown where no reasons for dismissal were stated in the motion and what was before the judge hearing the motion did not appear.

BILL IN EQUITY, filed in the Superior Court on November 15, 1946.

Following the appointment of receivers of the defendant Allied Freightways, Inc., a petition by Pilgrim Trust Company described in the opinion was heard by *Kirk*, J.

*F. T. Leahy*, (*S. Mondlick* with him,) for Pilgrim Trust Company.

*M. Rosenthal*, (*A. P. Rudnick* with him,) for Allied Freightways, Inc.

QUA, C.J. Allied Freightways, Inc., hereinafter called Allied, is in receivership in the Superior Court in this suit. Pilgrim Trust Company, hereinafter called Pilgrim, filed its petition in the suit to establish its status as a secured creditor of Allied to the amount of the balance due it on notes given to it by Allied which it contends are secured by an assignment by Allied to it of moneys which were to become due to Allied from Holland Transportation Company, Inc., hereinafter called Holland, under a so called "purchase agreement" between Allied and Holland. Allied and its receivers resisted Pilgrim's claim. The trial judge dismissed Pilgrim's petition, and Pilgrim appealed.

The crucial facts are these. Allied and Holland were both interstate motor carriers. On August 14, 1946, they entered into the "purchase agreement" by which Allied agreed to "sell" and Holland to "purchase" "all of the operating authority granted and issued to Allied by the Interstate Commerce Commission in Docket No. M. C. 55821 and subs thereto, or as set forth in a Certificate of Public Convenience and Necessity, or as approved for transfer to the said Allied." Holland agreed to pay Allied therefor the sum of $27,500, of which $5,000 was paid in escrow upon the execution of the agreement and the remainder was to be paid in ten days after the date of a final order of the commission "authorizing or approving the transaction for purchase contemplated by this agreement." The agreement was "conditioned upon final approval of the Interstate Commerce Commission in all respects required by law." Allied agreed to coöperate and assist Holland in preparing, presenting and filing an application seeking authorization and approval by the commission of the contemplated transfer.

On September 30, 1946, Allied assigned to Pilgrim as security for its notes held by Pilgrim all Allied's "right, title and interest in and to" its "purchase agreement" with Holland "together with any and all moneys due, or that may become due thereunder." By letter dated October 3, Pilgrim notified Holland of the assignment, and on the following day Holland wrote Pilgrim that when the interstate commerce commission should authorize the "sale" it would send the payments to Pilgrim. On February 20, 1947, the commission approved the transfer. The receivers were appointed for Allied on March 7, 1947, and thereafter were authorized to complete contracts made by Allied. After some litigation, which need not be described here, the "purchase agreement" was carried out between the receivers of Allied and Holland, and the purchase money came into the receivers' hands. The balance of principal due to Pilgrim from Allied has been fixed as $8,334.41.

It is unnecessary to consider whether the privilege or license of interstate operation granted to Allied by the interstate commerce commission under the motor carrier act was in any true sense property capable of being sold and bought. See *Jubinville* v. *Jubinville*, 313 Mass. 103, 106–107; *Rigs* v. *Sokol*, 318 Mass. 337, 345. At any rate, at the time of the assignment from Allied to Pilgrim, Allied had with Holland a good bilateral contract out of the subsequent performance of which a sum of money might become due from Holland to Allied. The receivers' contention, however expressed, amounts in substance to this: that the assignment to Pilgrim of the contract, upon which nothing was then due, is not operative against Allied's receivers afterwards appointed, since the receivers were not obliged to adopt the executory contract, and if they had not adopted it, nothing would ever have become due from Holland, and Pilgrim could have taken nothing by its assignment.

We do not feel bound to point out all the possible difficulties with this argument. It is true that Pilgrim took a security which might or might not become valuable. But the fact is that it did become valuable when the contract

was carried out and the "purchase" money was paid. The receivers could not take that money and then deny the prior claim upon it of the assignee. To permit them to do so would be to ignore the great weight of authority, including that of our own cases, which recognizes the validity of a present assignment of anticipated benefits under an executory contract. The existence of the contract by the terms of which something might become due was enough to support the assignment and to make possible a present transfer to the assignee of the right to receive that which might become due. The contract involved no intimate personal relationships or peculiar personal services with which, it is held, an assignment cannot be allowed to interfere. The breadth and inclusiveness of the principle of assignment of contracts are well illustrated by Restatement: Contracts, §§ 151, 154, 161, by Williston on Contracts (Rev. ed.) §§ 412, 413, 418, and by our decisions in *American Lithographic Co.* v. *Ziegler*, 216 Mass. 287, *Commercial Casualty Ins. Co.* v. *Murphy*, 282 Mass. 100, *Federal National Bank* v. *Commonwealth*, 282 Mass. 442, 451, *Claycraft Co.* v. *John Bowen Co.* 287 Mass. 255, 258, *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207, 217–218, and *Bergson* v. *H. P. Hood & Sons, Inc.* 300 Mass. 340, 343–344. Many more cases might be cited.

It follows that by the assignment of September 30, 1946, Pilgrim acquired as of that date a security title to the anticipated proceeds of the contract between Allied and Holland. Later, when receivers were appointed for Allied and those proceeds came into the receivers' hands, the proceeds remained subject to Pilgrim's lien to the extent of the sum due to it from Allied. *Jennings* v. *Whitney*, 224 Mass. 138. *Buswell* v. *Supreme Sitting of the Order of the Iron Hall*, 161 Mass. 224, 232. *Chamberlain Garages, Inc.* v. *New England Bond & Mortgage Co.* 267 Mass. 453, 459. *Commissioner of Insurance* v. *Conveyancers Title Ins. & Mortgage Co.* 300 Mass. 457, 461–462. Pilgrim has a right to have its position established as a creditor secured to the extent of its claim upon the proceeds of the contract.

The receivers further contend that the United States has

a lien or liens upon the property of Allied for taxes, notice of which (it is contended) was duly recorded pursuant to U. S. C. (1946 ed.) Title 26, § 3672, before the assignment from Allied to Pilgrim; that such lien or liens take precedence over any lien of Pilgrim based upon its assignment; and that the United States has presented to the receivers its proofs of claims. We do not think that rights of the United States ought to be adjudicated on the petition now before us. That petition is directed solely to the establishment of the rights of Pilgrim as a secured creditor. The United States is not mentioned in it, has filed no answer to it, did not, so far as the record discloses, appear in the Superior Court, and has not appeared before us. So far as we are aware the United States has no knowledge of this proceeding. It would seem that any lien of the United States attached to all property of Allied (U. S. C. [1946 ed.] Title 26, § 3670) at the moment when it became effective and followed that property into the receivers' hands. At some time the amount of any liens of the United States, their effect upon assets in the receivers' hands, and their priority as against other secured creditors may have to be determined, but it seems manifest that no attempt should now be made in the absence of the United States to determine separately the effect of its lien or liens upon the security rights of a single creditor. As to claims of the United States for taxes against estates in the course of administration in State courts see *Taylor* v. *United States,* 324 Mass. 639.

We see no reason why the security title of Pilgrim should be burdened with the expenses of the receivership, including charges for the receivers' services. It is the general rule that liens on property in a receiver's hands are not subordinated to such expenses. *Turner* v. *State Wharf & Storage Co.* 263 Mass. 92, 96–97. *Commissioner of Insurance* v. *Conveyancers Title Ins. & Mortgage Co.* 300 Mass. 457, 466–467. There is nothing to take this case out of the rule. It was obviously to the advantage of the receivership estate in general to carry out rather than to repudiate the "purchase agreement." The receivers in what they did were not acting

in any special sense in the interest of Pilgrim, the assignee, and their position in the present proceeding has been decidedly to Pilgrim's detriment.

Allied has appealed from the denial of its motion to dismiss Pilgrim's appeal. The motion itself states no reasons for dismissal. What evidence was before the court at the hearing on the motion does not appear. No error in the denial of the motion is shown. *Kolda* v. *National-Ben Franklin Fire Ins. Co.* 290 Mass. 182. *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79, 84–85. *Neilson* v. *Malcolm Kenneth Co.* 303 Mass. 437. *Duff* v. *Southbridge,* 325 Mass. 224.

An appeal by Pilgrim from the allowance of a motion by Allied to strike a motion by Pilgrim to vacate the final decree and reopen the case was waived at the argument before us and will be dismissed.

The interlocutory decree denying the motion of Allied to dismiss Pilgrim's appeal from the decree dismissing its petition is affirmed. The decree dismissing the petition is reversed, and a decree is to be entered establishing the position of Pilgrim as a secured creditor to the extent of Allied's indebtedness to it, but without prejudice to any lien of the United States. Pilgrim's appeal from the interlocutory decree allowing Allied's motion to strike Pilgrim's motion to vacate the final decree and reopen the case is dismissed.

*So ordered.*