THE THAYER COMPANY *vs.* THOMAS BINNALL & others
(and three companion cases[1]).

Worcester. Suffolk. May 4, 5, 1950. — November 16, 1950.

Present: QUA, C.J., RONAN, WILKINS, & WILLIAMS, JJ.

*Strike. Picketing. Labor and Labor Union. Unlawful Interference. Equity Pleading and Practice,* Injunction, Labor case, Appeal, Judicial discretion, Report of evidence, Decree. *Moot Question. Jurisdiction,* Labor. *Error,* Whether error harmful. *Interstate Commerce. Equity Jurisdiction,* Plaintiff's clean hands. *Mandamus.*

A motion to dismiss an appeal in a suit in equity on the ground that the appellant had not taken necessary steps seasonably in accordance with G. L. (Ter. Ed.) c. 231, § 135, must be denied where there was nothing to show either that the appellant had acted seasonably or that he had not.

A motion, filed in this court by the plaintiff in a suit in equity, to dismiss an appeal by the defendant from a final decree on the ground that the case was not ripe for entry in this court and had been entered prematurely because of the plaintiff's alleged right to claim and perfect an appeal from a denial of a previous motion by him in the trial court to dismiss the defendant's appeal, must be denied: the denial of the plaintiff's previous motion was not appealable and had no effect on the time for entry of the case in this court on the defendant's appeal.

The controversy involved in a suit in equity by a manufacturer against a labor union conducting a strike at the manufacturer's plant did not become moot on the ground that the strike had ceased to exist where it appeared that the defendants, in obedience to decrees enjoining the strike issued against them in the suit, suspended the strike and permitted full operation of the plant, but pressed appeals from the decrees to this court so that they might resume the strike in the event of a decision favorable to them, and had not given up the strike as lost.

In a suit in equity by a manufacturer against a labor union to enjoin a strike commenced against him by the defendants upon his making a contract with a "workers' council" of his employees recognizing the council, not the union, as the employees' representative, the mere fact that the contract expired during the pendency of the suit did not show that the controversy between the parties thereto had become

---

[1] The companion cases are by H. N. Thayer Company against the same defendants, and two cases by Thomas Binnall and others against the Justices of the Superior Court. The Thayer Company and H. N. Thayer Company were permitted to intervene in the third and fourth cases, respectively.

moot where it appeared that the contract had been renewed or extended without substantial change.

A judge, hearing a suit in equity to enjoin a strike on the merits following denial of a preliminary injunction by another judge, might properly hear evidence introduced to show that the strike was then being conducted in an illegal manner and act upon a second application for a preliminary injunction before proceeding to complete the hearing on the merits.

The issuance of a preliminary injunction against defendants conducting a strike in a "labor dispute" was not justified merely by findings that unlawful acts were being and would continue to be committed by the defendants in connection with the strike, where it appeared that G. L. (Ter. Ed.) c. 214, § 9A, inserted by St. 1935, c. 407, § 4, had not been observed in certain particulars.

There was a "labor dispute" within G. L. (Ter. Ed.) c. 149, § 20C, inserted by St. 1935, c. 407, § 1, where a controversy arose between an employer and a labor union as to the union's acting as bargaining agent for the employer's employees and, shortly after the employer made a contract with a "workers' council" of his employees, culminated in a strike brought to compel the employer to recognize the union and participated in by employees and conducted by the union, which from the beginning had acted for some of the employees and later had come to include in its membership a majority of them.

Defendants conducting a strike in a "labor dispute" were not shown to have been harmed by a preliminary injunction which, although issued against them without compliance with certain of the requirements of G. L. (Ter. Ed.) c. 214, § 9A, inserted by St. 1935, c. 407, § 4, was followed not more than four working days later by a permanent injunction by final decree which was proper on the merits and was entered on the basis of findings of the character required by said § 9A.

A strike against the proprietor of a factory, involving mass picketing of the factory and repeated acts of violence on the public ways in its vicinity, interference with and insults to persons entering and leaving the factory, and intimidation of and damage to the property of nonstrikers, was conducted by illegal methods.

The mere fact that interstate commerce was affected by the operation of a factory against whose proprietor a strike was in progress did not deprive the State courts of jurisdiction to enjoin mass picketing involving violence and other unlawful acts.

Findings reported by the trial judge in a suit in equity could not be reviewed by this court on an appeal with a purported report of the evidence where it did not appear that there had been a proper designation of a person to report the evidence, and it did appear that exhibits which might have been material had been introduced in evidence at the trial but were not included in the record on appeal nor certified by the trial judge for use before this court.

Unclean hands of the plaintiff were not shown in a certain suit in equity brought by the proprietor of a factory to enjoin continuance of a strike conducted for the purpose of compelling the plaintiff to recognize a

labor union as the representative of his employees and to break a contract made by him with a "workers' council" of his employees, and to enjoin picketing involving violence and other unlawful acts.

On the record in a suit in equity by the proprietor of a factory against defendants conducting a strike in a "labor dispute," where there were findings by the trial judge satisfying the requirements of G. L. (Ter. Ed.) c. 214, § 9A, inserted by St. 1935, c. 407, § 4, and showing, among other things, that the strike had been brought for the purpose of coercing the plaintiff to 'recognize a certain labor union as the collective bargaining agency for his employees and to break a contract previously made by him with a "workers' council" of his employees, and that the defendants were engaging in mass picketing of the plaintiff's factory involving violence and other unlawful acts which would continue unless restrained, this court affirmed a final decree including, among others, provisions enjoining the defendants from continuing the strike for the purpose of so coercing the plaintiff and from continuing to engage in any picketing.

The expiration of a preliminary injunction upon entry of a final decree in a suit in equity growing out of a "labor dispute" eliminated the foundation of a pending mandamus proceeding to compel the judge who had entered the preliminary injunction to make a report in accordance with G. L. (Ter. Ed.) c. 214, § 9A (6), inserted by St. 1935, c. 407, § 4, and required dismissal of the mandamus proceeding.

A single justice of this court has no power under G. L. (Ter. Ed.) c. 214, § 9A (6), inserted by St. 1935, c. 407, § 4, to set aside a final decree entered after a preliminary injunction in a suit in equity growing out of a "labor dispute."

Two BILLS IN EQUITY, filed in the Superior Court on February 1, 1949. Also

Two PETITIONS for writs of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on March 14, 1949.

The suits in equity were heard by *Kirk*, J., and the mandamus cases by *Spalding*, J.

*S. S. Grant,* (*M. Raphael* of New York with him,) for Binnall and others.

*S. M. Salny,* (*W. A. Laughlin* with him,) for The Thayer Company and another.

*F. E. Kelly,* Attorney General, *H. P. Fielding & L. E. Ryan,* Assistant Attorneys General, for the Justices of the Superior Court, submitted a brief.

RONAN, J. The first two cases are suits in equity which are here by appeals from final decrees granting injunctive

relief against the defendants, who were conducting a strike at the plants of each of the plaintiffs. The defendants also appealed from interlocutory decrees granting preliminary injunctions against them.

The last two cases are here by appeals by those who were defendants in the two suits in equity from judgments of a single justice of this court dismissing petitions for writs of mandamus to compel the trial judge in the suits to report questions of law arising out of the granting by him of the preliminary injunctions.

The two companies which were the plaintiffs in the suits in equity will be hereinafter referred to as the plaintiffs; and those who were defendants in the suits will be hereinafter referred to as the defendants.

Certain motions to dismiss all the appeals must be first considered.

The plaintiffs filed motions in the Superior Court in the equity cases to dismiss the appeals therein. The judge on January 10, 1950, denied those motions. The defendants entered their appeals in this court on January 26, 1950.

The plaintiffs also filed in this court motions in the equity cases to dismiss the appeals on the ground that the defendants had not taken the necessary steps to perfect and enter them within the time prescribed by G. L. (Ter. Ed.) c. 231, § 135, and on the alternative ground that the appeals had been entered prematurely in this court. It is contended by the plaintiffs that there is nothing to show when the clerk of the Superior Court gave the defendants notice that the papers for the appeals had been prepared and were ready for filing in this court or that, if such notice was given, they were filed within five days thereafter. The difficulty with these contentions of the plaintiffs is that it has not been made to appear that the defendants did not act within the designated times. The motions filed in this court cannot be sustained on the first ground. *Duff* v. *Southbridge*, 325 Mass. 224. *Great American Indemnity Co.* v. *Allied Freightways, Inc.* 325 Mass. 568, 573. Neither can these motions

be sustained on the alternative ground.[1] The denial of a motion to dismiss as distinguished from the granting of such a motion relates only to an interlocutory matter. *Scola v. Director of the Division of Employment Security, ante,* 180. Compare *Frost v. Kendall,* 320 Mass. 623, 624. The orders of the Superior Court denying the motions filed there did not affect the final decrees or extend the time within which appeals from such decrees could be entered in this court. The short answer to the plaintiffs' contention is that the denial of such a motion is not appealable. *Medlinsky v. Premium Cut Beef Co.* 320 Mass. 22, 28.

The motions filed in the Superior Court to dismiss the appeals, another motion to dismiss them filed in this court, and motions filed in this court to dismiss the appeals in the mandamus cases are based upon the theory that the strikes had ceased to exist because the plants of the plaintiffs had long been in full operation since the appeals were taken and also that the contracts of employment existing at the time of the strikes had expired, and that consequently the controversy involved in the suits had become moot.

A strike like any other conflict comes to an end when the strikers have spent their strength and their subsequent efforts have no substantial effect upon the business of the

---

[1] The following is an excerpt from the plaintiffs' brief: "The cases in the court below must be 'ripe for entry' in the Supreme Judicial Court at the time of such entry in this court. Acts or occurrences after such entry cannot cure or affect the situation as it existed at the time of entry. . . . When these cases were entered in the Supreme Judicial Court on January 26, 1950, they were not 'ripe for entry,' by reason of the fact that no decree had been entered on Judge Kirk's order of January 10, 1950, denying the plaintiffs' motions to dismiss the defendants' appeals, and . . . such order by Judge Kirk was final in nature and required the entry of a decree thereon in order to lay the basis for an appeal by the plaintiffs. Thus the plaintiffs' rights of appeal were cut off by reason of the entry of the case in the Supreme Judicial Court on January 26, 1950, because, upon its entry in this court, the Superior Court had no further jurisdiction to receive an appeal, since the cases were no longer in that court. G. L. c. 214, § 22, does not apply, as denial of motions to dismiss was not interlocutory in nature. . . . Clearly the plaintiffs had a right to appeal from this order by Judge Kirk as they also had a right to findings of fact in accordance with G. L. c. 214, § 23. Their requests for such findings were pending before and under consideration by Judge Kirk at the time of the entry in this court . . . . Judge Kirk did not take action upon these requests, because of the intervening and superseding entry of these cases in this court. The inclusion of Judge Kirk's findings of fact was necessary in order to constitute the complete record, and these had to be filed before the case could become 'ripe' for entry in the Supreme Judicial Court." — REPORTER.

employer so that there is no genuine hope of success. *M. Steinert & Sons Co.* v. *Tagen,* 207 Mass. 394, 397. *Samuel Hertzig Corp.* v. *Gibbs,* 295 Mass. 229, 231. *Hubrite Informal Frocks, Inc.* v. *Kramer,* 297 Mass. 530, 534–535. . Here the strikes were being waged by the strikers in full force and vigor until all their activities were enjoined. These injunctions were obeyed and the plaintiffs thereafter operated their plants without any interference by the defendants. So far as appears, the defendants have not written off these strikes as lost, or given up the struggle as a lost cause, but on the contrary are now pressing their appeals so that in the event of a favorable decision they may resume the strikes. In these circumstances, the controversy still exists, awaiting the determination by this court of the rights of the parties. The controversy has not become moot. *Bakery Sales Drivers Local Union No. 33* v. *Wagshal,* 333 U. S. 437, 443. . Hostilities have been suspended but not ended as will appear from what we have next to say.

It is finally contended that the motions to dismiss should have been granted because the contracts of employment with the workers' councils in effect when the strike began have expired. One contract has been renewed with one plaintiff and the contract with the other plaintiff has been extended with some change therein. There is nothing to indicate that so far as the contracts are concerned they are substantially different from those in existence when the strike commenced. The plaintiffs, of course, do not contend that the injunctions ceased when the old contracts expired and we see no logic in their contention that the controversy came to an end when the contracts were renewed or extended. We are not impressed with the argument that in order to keep their rights alive the local should have given notice to the plaintiffs before the contracts had expired, or taken other steps. The issues originally involved continue without any material change. Affidavits filed by the defendants in reply to motions of the plaintiffs show that at or about the time of the strike complaints charging the plaintiffs with unfair labor practices and involving the then

existing contracts of employment with the workers' councils had been filed by employees with the national labor relations board under U. S. C. (1946 ed.) Sup. I, Title 29, § 158 (a) (1), (2), (3). Proceedings on these charges are seemingly pending before that board. We do not believe that this industrial struggle has become moot. *Jaffarian* v. *Mayor of Somerville*, 275 Mass. 264. *Baron* v. *Fontes*, 311 Mass. 473, 477. *Kenworthy & Taylor, Inc.* v. *State Examiners of Electricians*, 320 Mass. 451. *Commissioner of Corporations & Taxation* v. *Ryan*, 323 Mass. 154.

## THE FIRST TWO CASES.

Preliminary injunctions having been denied after a hearing shortly after the return of the orders of notice, the suits came on to be heard upon the merits by another judge. After the hearing had continued for three days, during which evidence was introduced tending to show that the strikes were being conducted in an illegal manner, the judge directed that the order of the trial be modified and stated that he would hear further evidence as to the manner in which the strikes were being conducted, decide the motions for preliminary injunctions, and then proceed to complete the hearing upon the merits. He made findings of fact with reference to these motions and granted preliminary injunctions. He thereafter proceeded with the hearing, made further findings of fact, and ordered the entry of final decrees, granting injunctive relief.[1] The judge was within his rights

---

[1] The final decree entered in each case on March 15, 1949, "permanently restrained and enjoined." certain named defendants "and their agents, servants, attorneys and all those in active support of or participating with them" from "1. Conducting or continuing to carry on a strike against the plaintiff for the purpose of compelling the plaintiff to recognize or negotiate with said Local 154 as the collective bargaining agent of the plaintiff's employees, or for the purpose of coercing the plaintiff to break its contract with its employees. 2. Picketing in any numbers whatever or in any way encouraging or supporting the congregation of groups about the entrances and exits of the plaintiff's place of business . . . . 3. Interfering in any way with the operation of the plaintiff's business and the access and entry to and exit from the plaintiff's place of business by its officers and employees, and from authorizing, advising and assisting any other person so to do. 4. Interfering in any way with any business which the plaintiff may have to do with any person or persons." The decree further provided: "Nothing contained in the foregoing shall be construed or considered as an order to the defendants or any of them to return to work." — REPORTER.

in adopting this procedure. A judge should take immediate and effective measures to check and suppress acts of violence occurring during a hearing, and he would be remiss in the performance of his duties if he should permit such acts to continue unabated until the conclusion of the hearing. The fact that preliminary injunctions had been previously denied did not stay the hand of the trial judge to grant relief if the acts occurring after the hearing on the first application for an injunction warranted such action. Successive applications for injunctions are not to be encouraged, but where events happening after the denial of an application establish the need of injunctive relief, such relief should be granted. *Louisville & Nashville Railroad* v. *Kentucky Railroad Commission,* 214 Fed. 465, 467. *Red Star Yeast & Products Co.* v. *La Budde,* 83 Fed. (2d) 394, 396. *Ball* v. *Paramount Pictures, Inc.* 57 Fed. Sup. 505, 507. *In re Davis,* 31 Cal. (2d) 451. *Phelps Dodge Copper Products Corp.* v. *United Electrical, Radio & Machine Workers of America,* 138 N. J. Eq. 3. *Tallevast* v. *Kaminski,* 146 S. C. 225.

We turn now to the findings made by the judge. Before he ordered the preliminary injunctions he found that repeated acts of violence had taken place on the public ways in the vicinity of the plants of the plaintiffs; that mass picketing had occurred involving at times more than two hundred pickets at one plant and sixty-five pickets at the other plant; that persons including employees and those with whom the plaintiffs had contractual obligations were seriously interfered with or actually prevented from entering or leaving the plants; that vile and obscene names were directed to men and women entering or leaving the plants; that threats of violence and other unlawful acts had been made to nonstrikers and their families at their homes, on the public ways, and at their places of business; that private property of nonstrikers had been damaged in an effort to intimidate them to join the strikers; that these acts had been committed by the defendants named in the bill and by persons acting in concert with them; that the police

were unable to prevent such acts; and that such acts would continue unless enjoined.

These findings were inadequate to support the issuance of these preliminary injunctions. There is no finding that substantial and irreparable injury to the property of the plaintiffs would follow if injunctions were denied or that denial of relief would inflict greater damage on the plaintiffs than the granting of relief would inflict upon the defendants. There is lacking any finding that the plaintiffs have complied with their obligations imposed by law involved in these labor disputes or that they have made reasonable efforts to settle the disputes by negotiation, mediation or arbitration in so far as they might have been bound to seek such means. We find nothing in the record or docket indicating that either plaintiff had filed an undertaking with adequate surety to recompense those enjoined for any loss, expense or damage that might be caused by the granting of these preliminary injunctions if it should subsequently appear that they were improvidently and erroneously issued. The provisions of G. L. (Ter. Ed.) c. 214, § 9A, inserted by St. 1935, c. 407, § 4 — see now St. 1950, c. 452, § 3 — were not observed in the granting of these preliminary injunctions. The effect of the failure to comply with this section will be presently discussed.

At the conclusion of the hearing on the merits the judge made various findings of fact which incorporated by reference those already made with respect to the preliminary injunctions. We will attempt to summarize these latter findings. The plaintiffs, while separate and independent corporations, appear to be closely affiliated. They were engaged in the manufacture of children's carriages and other wheel goods in Gardner and in the sale of these products in various States. The parties agree that the plaintiffs conduct "an industry affecting commerce" as those words are used in the national labor relations act, U. S. C. (1946 ed.) Title 29, § 151 et seq., as amended by the labor management relations act of 1947, U. S. C. (1946 ed.) Sup. I, Title 29, § 141 et seq. The defendants are members and

officers of a voluntary unincorporated association known as Local 154 which is a branch of a national body called the United Furniture Workers of America, C. I. O. The local has two thousand members. Neither the local nor the national body can be certified as a collective bargaining agent because of the failure to file affidavits that their officers are not members of the communist party, or affiliated with it, as required by the labor management relations act, U. S. C. (1946 ed.) Sup. I, Title 29, § 159 (h). The production employees in each plaintiff's plant were organized in a workers' council which was recognized by the plaintiff employer in that particular plant as the sole and exclusive bargaining agent of employees engaged therein. The officers of these workers' councils, so called, have not filed the affidavits required by § 159 (h). Neither plaintiff had any contract with the local, but each had written contracts of employment with the workers' council purporting to represent the employees in that particular plant. These contracts expired on December 15, 1948. The defendant Binnall, the business agent of the local, on October 26, 1948, wrote to the treasurer of The Thayer Company advising him that the local represented a majority of the employees; that the workers' council had decided that the existing contract should be administered by the local; that the local was desirous of commencing collective bargaining negotiations in behalf of the employees; and that the letter would serve as a notice to terminate the existing contract between The Thayer Company and the workers' council and to exercise, if necessary, "our right to strike." The treasurer replied that he would not recognize the local as the collective bargaining agency until it should be certified as such by the national labor relations board. On December 15, 1948, Binnall sent a telegram to the treasurer notifying him that the local had been designated as the collective bargaining agency and cautioning The Thayer Company not to contract with any organization except the local. The Thayer Company executed on December 15, 1948, a new contract with the workers' council organized in that plant and on

January 15, 1949, the other plaintiff, H. N. Thayer Company, executed a similar contract with the workers' council in that plant. Both contracts ran until December 15, 1949. The local on January 25, 1949, voted to strike against both plaintiffs. The strike began the next day. The judge found that the strikes were brought to compel the plaintiffs to recognize the local as the collective bargaining agency for their employees, to coerce the plaintiffs to violate contracts of employment between them and the workers' councils, and to injure the plaintiffs. He ruled there was no obligation upon the part of the plaintiffs to recognize the local as such agent. He excluded evidence of transactions between the employees of the plaintiffs and the local as to the signing of applications for membership in the local and other activities between the employees and the local but stated that upon the offer of proof made by the defendants he would be warranted in finding that a majority of the employees had become members of the local subsequently to the execution of the written contracts between the plaintiffs and the workers' councils. He also ruled that these employment contracts were valid but that, if for any reason they were voidable, the defendants had no standing to attack them. He further ruled that the plaintiffs were not required to seek any remedy, administrative or otherwise, before bringing these suits. He found, however, that the plaintiffs had appeared before the State board of conciliation and arbitration but that efforts to settle the controversy failed because of the defendants' insistence that the local be recognized as the collective bargaining agent.

The judge, although of opinion that the controversy did not constitute a labor dispute within said c. 214, § 9A, made the following findings, which he stated were made upon all the evidence: that by reason of the combination of members of the local, intentionally endeavoring to injure the business of each plaintiff, unlawful acts had been committed and would continue unless restrained; that substantial and irreparable injury had been sustained by the said businesses; that the injury to the property of each plaintiff was "greater

than that to the defendants"; that the denial of relief would inflict greater injury upon each plaintiff than granting it would upon the defendants; that the plaintiffs had no adequate remedy at law; that the public officers were unable to furnish adequate protection to the property of each plaintiff in that the injury to the plaintiffs' property had been caused not by any acts of the defendants which were violations of the criminal law but by acts unlawful under the civil laws of this Commonwealth; and that the plaintiffs had not failed to comply with any obligations imposed upon them by law and had made reasonable efforts to settle the dispute by negotiation and with the aid of available governmental machinery. He found each strike to be unlawful.

The judge excluded evidence of the dealings between the employees and the local prior to the strike. It is clear, however, from his findings that at the inception of the strike some of the employees were actively engaged in picketing. We construe the statement of the judge, that he would have been warranted in finding upon the defendants' offer of proof that, after the contracts of employment had been executed between each plaintiff and the workers' councils, respectively, a majority of the employees became members of the local, as meaning that he would have made such a finding if the evidence had been admitted. We therefore have a situation where persons who were still employees were participating in a strike under the management of a local which, from the beginning of the controversy, was acting for some of the employees and which, shortly thereafter, included a majority of the employees. See *Fashioncraft, Inc.* v. *Halpern,* 313 Mass. 385, 389. It was long ago decided that unorganized employees could select a union official to act as their spokesman in making and adjusting their demands with their employer. *Cornellier* v. *Haverhill Shoe Manufacturers' Association,* 221 Mass. 554, 562–563. But in order better to secure industrial peace the present system of collective bargaining was created, and a controversy concerning the representation by persons who could

be found to be acting in behalf of the employees in negotiating, fixing, maintaining, changing, or seeking to arrange, terms or conditions of employment falls within the definition of a labor dispute contained in G. L. (Ter. Ed.) c. 149, § 20C, inserted by St. 1935, c. 407, § 1, and the provisions of G. L. (Ter. Ed.) c. 214, § 9A, relative to the granting of injunctions in labor disputes are applicable. See now St. 1950, c. 452, § 2 (c), (d) (1). It is plain that there was a labor dispute between the employees and their employers arising out of the employment. *Mengel* v. *Justices of the Superior Court*, 313 Mass. 238, 243. *Fashioncraft, Inc.* v. *Halpern*, 313 Mass. 385. *Davis Brothers Fisheries Co. Inc.* v. *Pimentel*, 322 Mass. 499, 507. The instant cases are distinguishable from *Simon* v. *Schwachman*, 301 Mass. 573, and *Quinton's Market, Inc.* v. *Patterson*, 303 Mass. 315. But, notwithstanding the defendants' contentions to the contrary, the sum total of all the findings set forth above is that the judge, before entering final decrees, made findings sufficient to demonstrate that there was compliance with § 9A. In this respect, we are of opinion that the findings that the plaintiffs have not failed to comply with any obligation imposed upon them by law and that they have made every reasonable effort to settle these disputes by negotiation and "with the aid of available governmental machinery" — which, we think, includes that adapted for mediation and arbitration — show that the plaintiffs are not barred from relief by (4) of § 9A.

A preliminary injunction was granted in one suit on Thursday, March 10, 1949, and in the other on Friday, March 11, 1949. Final decrees were entered in both suits on Tuesday, March 15, 1949. It thus appears that neither of these preliminary injunctions was in effect for more than four working days, even assuming the plants were in operation on Saturday, March 12, 1949. The purpose of a preliminary injunction is to maintain the situation in statu quo until the merits can be determined. In labor disputes, however, so much time ordinarily elapses between the granting of a preliminary injunction and the time when a

final decree can be reviewed on appeal that as a practical matter many regarded the issuance of a preliminary injunction as an effectual strike breaking weapon. *Mengel* v. *Justices of the Superior Court,* 313 Mass. 238, 244–245. No such complaint can be made here of any delay. Indeed, these preliminary injunctions existed for a shorter period than if, in due course, they had been reviewed or set aside by a single justice of this court. The general rule is that one cannot recover damages arising from the wrongful issuance of an injunction against him in the absence of a bond given as a condition to the issuance of the injunction unless he can make out a case of malicious prosecution or abuse of process. There is nothing here to indicate such a malicious tort or in fact that the defendants or any of them sustained any expense, damage or loss on account of the granting of these preliminary injunctions. *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182. *Martin* v. *Murphy,* 216 Mass. 466. *Weinberg* v. *Goldstein,* 241 Mass. 259. *Sprague* v. *Rust Master Chemical Corp.* 320 Mass. 668.

It is plain from the findings already recited that the methods adopted by the defendants in conducting these strikes were illegal. *Robitaille* v. *Morse,* 283 Mass. 27, 31. *Boylston Housing Corp.* v. *O'Toole,* 321 Mass. 538, 551. A State has a solemn obligation to suppress acts of the character described in these findings, which were committed by the defendants and those acting in concert with them, in order that injuries to its citizens may be prevented, their property protected, and peace and order restored and maintained. It is immaterial in this respect whether or not the strike involves the operation of a plant affecting interstate commerce. The duty of policing strikes under the national labor relations act and also under the labor management relations act, U. S. C. (1946 ed.) Sup. I, Title 29, § 141 et seq., remains with the States. In a case where acts of violence were committed by the strikers it was said that "Congress has not made such employee and union conduct as is involved in this case subject to regulation by the federal Board." *Allen-Bradley Local No. 1111, United*

*Electrical, Radio & Machine Workers of America* v. *Wisconsin Employment Relations Board,* 315 U. S. 740, 749. In answer to a contention that a series of sit down strikes came within the concerted activity mentioned in U. S. C. (1946 ed.) Sup. I, Title 29, § 157, and that consequently a State had no authority to prevent them, it was said, "While the Federal Board is empowered to forbid a strike, when and because its purpose is one that the Federal Act made illegal, it has been given no power to forbid one because its method is illegal — even if the illegality were to consist of actual or threatened violence to persons or destruction of property. Policing of such conduct is left wholly to the States." *International Union, U. A. W. A., A. F. of L., Local 232* v. *Wisconsin Employment Relations Board,* 336 U. S. 245, 253. See also *Simon* v. *Schwachman,* 301 Mass. 573, 577; *Fashioncraft, Inc.* v. *Halpern,* 313 Mass. 385, 390–391.

Any publication of the facts by picketing differs materially from publication by radio, by newspapers, or by public meetings. The difference lies chiefly in the fact that picketing is oftentimes much more than the communication of ideas and the expression of free speech. It was said in *Saveall* v. *Demers,* 322 Mass. 70, 74, "If picketing is speech it is certainly also much more. However peacefully it may be carried on, it possesses elements of compulsion upon the person picketed which bear little relation to the communication to anyone of information or of ideas. And resort is commonly had to it precisely because of these elements, which, much more than any force of argument contained in it, give it the power it possesses." It was stated in *Building Service Employees International Union, Local 262* v. *Gazzam,* 339 U. S. 532, 537, "But since picketing is more than speech and establishes a locus in quo that has far more potential for inducing action or nonaction than the message the pickets convey, this Court has not hesitated to uphold a state's restraint of acts and conduct which are an abuse of the right to picket rather than a means of peaceful and

truthful publicity." See *Hughes* v. *Superior Court of California*, 339 U. S. 460; *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local 309* v. *Hanke*, 339 U. S. 470; *Fashioncraft, Inc.* v. *Halpern*, 313 Mass. 385, 390–391; *Colonial Press, Inc.* v. *Ellis*, 321 Mass. 495, 500–501. The findings of the judge disclose that the picketing had been used as an instrumentality to instil fear in others and to intimidate them in order to secure compliance with the wishes of the local. Upon these findings there was no error in concluding that these strikes were unlawful.

The defendants, however, contend that these findings are not supported by the evidence and that they are plainly wrong. No principle of equity practice is better established than that such a contention cannot be sustained in the absence of a report of all the evidence. The furnishing of such a report is the only way in which this court can be put in the position of the trial judge and enabled to review his conclusions of fact. There is no other method by which this court can test the correctness of such conclusions. We cannot reverse his findings of fact except by an examination of the evidence. We have before us what the defendants contend is a transcript of the evidence. The plaintiffs on the other hand contend that it is not a part of the record because it was not taken in accordance with the statute, G. L. (Ter. Ed.) c. 214, § 24, as amended by St. 1947, c. 365, § 1, or Rule 76 of the Superior Court (1932). There is nothing outside of a recital in her notes by a stenographer to show that any person was designated to take the testimony. There is no record indicating any action by the judge or any notation made by the clerk with reference to any appointment. Furthermore, an examination of the dockets with which we have been furnished, *Styrnbrough* v. *Cambridge Savings Bank*, 299 Mass. 22, discloses nothing whatever with reference to the appointment of any such person. We are therefore constrained to hold that we cannot consider this so called transcript of the evidence. *Romanausky* v. *Skutulas*, 258 Mass. 190, 194. *Abeloff* v. *Peacard*,

272 Mass. 56. *Ansara* v. *Regan,* 276 Mass. 586. *Bowles* v. *Comstock,* 286 Mass. 159. *Gleason* v. *Hastings,* 300 Mass. 305. *Gordon* v. *Guernsey,* 316 Mass. 106. *Silke* v. *Silke,* 325 Mass. 487.

There is another answer to this contention of the defendants. Numerous exhibits were introduced in evidence at the hearing in the Superior Court. Some of them might have been of considerable materiality in influencing the judge in making his findings of fact. We cannot say that they did not form an important branch of the evidence. It would not be safe for us to consider the so called transcript without also considering these exhibits. Motions of the defendants to incorporate in the record exhibits 1 to 20, inclusive, were denied on May 1, 1950, by this court, the trial judge not having granted the request of the defendants so to do. Obviously, these cases cannot be heard on appeal "upon the same evidence as on the original hearing." G. L. (Ter. Ed.) c. 214, § 24, as amended by St. 1947, c. 365, § 1. We certainly should not attempt to decide issues of fact on only a portion of the evidence. *Goshein* v. *Chavenson,* 261 Mass. 403, 404. *Yoffa* v. *National Shawmut Bank,* 288 Mass. 422, 426. *Davis & O'Connor Co.* v. *Shell Oil Co. Inc.* 311 Mass. 401, 403. *Leventhal* v. *Jennings,* 311 Mass. 622, 624. *Lucier* v. *Williams,* 323 Mass. 458, 462. *Band* v. *Davis,* 325 Mass. 18, 22. *Fucillo* v. *Fucillo,* 325 Mass. 723, 724–725.

The defendants next contend that the plaintiffs should be denied relief because they do not come into court with clean hands. The plaintiffs are not seeking relief arising out of any contract or transaction with the local. The plaintiffs have not been shown to have adopted any unfair or inequitable conduct by way of fraud, lack of good faith or otherwise in dealing with any matter in which the local had a direct and immediate interest. The judge made no specific finding of unclean hands. We are confined in deciding the question by the facts reported together with the inferences which may be drawn from these facts. *Vergnani* v. *Vergnani,* 321 Mass. 699. They do not demonstrate that

the granting of relief on the ground that the defendants have abused the privilege of picketing would be contrary to public policy or the integrity of the courts. *Moore Drop Forging Co.* v. *McCarthy*, 243 Mass. 554, 564. *New England Wood Heel Co.* v. *Nolan*, 268 Mass. 191, 197. *Samuel Hertzig Corp.* v. *Gibbs*, 295 Mass. 229, 231. *MacCormac* v. *Flynn*, 313 Mass. 547, 549–550. *Walsh* v. *Atlantic Research Associates, Inc.* 321 Mass. 57, 65–66. *Deutschmann* v. *Board of Appeals of Canton*, 325 Mass. 297, 299.

There was no error in the final decrees prohibiting all picketing. The judge saw the witnesses and was in a far better position than we are to determine the attitude of the strikers, their temperament and emotions, the depth of their feelings of hostility toward the plaintiffs, and the likelihood of a repetition of the unlawful acts if picketing was not restrained. There is a specific finding that unlawful acts would continue unless restrained. *Steiner* v. *Long Beach Local No. 128 of the Oil Workers International Union*, 19 Cal. (2d) 676, 684. Restatement: Torts, § 816.

## THE THIRD AND FOURTH CASES.

The defendants in the first and second cases filed on March 14, 1949, petitions for writs of mandamus to compel the judge who entered the preliminary injunctions on March 10, 1949, and March 11, 1949, respectively, to report forthwith the questions of law therein involved as requested by the defendants in order that his action might be reviewed by a single justice of this court as provided by said c. 214, § 9A (6). The trial judge had declined to make such report and upon the conclusion of all the evidence he entered, on March 15, 1949, final decrees. It was the duty of the judge to comply with the statute last mentioned and he would undoubtedly have done so except for the mistaken belief that he was not dealing with a labor dispute within § 9A. *Mengel* v. *Justices of the Superior Court*, 313 Mass. 238. By the time these petitions came before the single justice, final decrees had been entered, and the preliminary

injunctions were no longer in effect. *Lowell Bar Association*
v. *Loeb*, 315 Mass. 176, 190–191. *Scola* v. *Scola*, 318 Mass.
9, 11. The defendants recognized this fact and stated to
the single justice that the writs of mandamus would be of
no value if the final decrees were to stand. Of course, the
writs could not issue when the foundation upon which the
petitions rested had disappeared before the petitions were
heard. *Russell* v. *Secretary of the Commonwealth*, 304 Mass.
181. *Nichols* v. *Commissioner of Public Welfare*, 311 Mass.
125. *Henderson* v. *Mayor of Medford*, 321 Mass. 732. The
defendants, therefore, sought to have the single justice set
aside the final decrees. The only authority conferred upon
the single justice was to affirm, reverse or modify an order
of the trial judge granting or denying a preliminary injunc-
tion. G. L. (Ter. Ed.) c. 214, § 9A (6), as inserted by St.
1935, c. 407, § 4. He rightly ruled that he had no power to
set aside the final decrees. There was no error in dismissing
the petitions.

> *Motions to dismiss denied.*
> *Decrees affirmed with costs in the first two cases.*
> *Judgments affirmed in the last two cases.*