Fremont-Smith, J.
This case, in which the plaintiff bank seeks to recover from the comaker of a note for $65,000, was tried on August 7, 1995. The defendant, in his counterclaim, alleges that the plaintiff bank (Commerce) induced him to sign the note by way of material misrepresentations on which he reasonably relied, and that it also wrongfully impaired collateral for repayment of the loan, so that he owes it nothing.
Based on all of the credible evidence, the Court makes the following findings, rulings and order for judgment.
On or about December 5,1991, the plaintiff entered into a business transaction with Edward R. Bryson as a result of which a note for $65,000 to Commerce was executed by Biyson and cosigned by Hayeck. Bryson was then the owner and sole stockholder of a corporation known as Northeast National Mortgage Company, Inc., (NENMCO), which processed loans for Housing and Urban Development (HUD). The loan of $65,000 to Bryson was for six months for the purpose of augmenting the capital of NENMCO in order to meet HUD net worth requirements.
The bank’s loan documents memorialize that it was contemplated the loan proceeds would be deposited in a NENMCO account at Commerce with custodial control held by the bank and would be used to meet HUD’s net worth requirements and “not for any other corporate purposes.” Repayment was to come from NENMCO’s cash flow and/or from the $65,000 deposit, a certificate of deposit for which was to be held by Commerce. Subsequently, the $65,000 was deposited into a new NENMCO account in order to comply with the above understanding between Commerce and Biyson (that the funds would remain on deposit at the bank as security for repayment of the loan). Hayeck was led by Bryson to believe that this arrangement was in place when he cosigned the note.
In June 1992, before the note was renewed and extended through December 31, 1992, Hayeck conversed at the bank’s offices with a bank officer, Gennaro. Gennaro assured Hayeck that the bank was holding the $65,000 in a separate NENMCO account from which the note would be repaid,[1] and that NENMCO’s corporate stock was also held by the bank as collateral for the loan. Hayeck reasonably relied on these assurances in signing the note.
When, after Bryson’s death, the funds were all paid by the bank to NENMCO and/or to Bryson’s widow, Commerce was aware of the outstanding loan and of its arrangement with Hayeck and Bryson that the $65,000 would be held and used solely to ensure repayment of the loan. Although there were also other NENMCO and personal Bryson funds on deposit at the bank, none of these were ever “set off’ to reduce the loan, and Commerce never attempted to exercise its voting rights in the stock so as to effectuate repayment from NENMCO’s bank accounts or other assets.
G.L.c. 106, §3606(1) provides that if, without the other party’s consent,[2] a holder of a note: “(b) unjustifiably impairs any collateral from the instrument given by or on behalf of the party or any person against whom he has a right of recourse,” it discharges such other party to the note.
Here, the bank, contrary to its representations to defendant with respect to holding the NENMCO stock and the $65,000 deposit as collateral, impaired the collateral, by allowing a transfer on or about January 10, 1992, of $50,000 of the funds, and by failing to take any action, as holder of the stock, to seize NENMCO’s assets, including its bank accounts.
In sum, pursuant to G.L.c. 106, §3606(1), Hayeck was discharged as a party to the notes by the bank’s unjustified impairment of the collateral, and is further absolved from liability on the notes because he was fraudulently induced to execute them as a result of Bryson’s and Commerce’s negligent misrepresentations.
As the Court finds that Hayeck is not liable under the notes to Commerce, Hayeck’s counterclaims against Commerce and his cross claims against Nancy Biyson (for recovery from them of his liability to the bank) are no longer applicable and should be dismissed. Hayeck’s counterclaim for recovery of attorney fees and costs resulting from the bank’s alleged violation of c. 93A must also be dismissed, as the evidence does not support a finding that Commerce knowingly acted unfairly by permitting withdrawal of the funds (as was the case in Dahlborg v. Middleborough Trust Co. 16 Mass.App. 481, 487 (1983)). Rather, the evidence here supports only a finding that Biyson and Commerce negligently misled Hayeck when he executed the notes and that Commerce then unjustifiedly impaired the collateral for the loan.
ORDER FOR JUDGMENT
Accordingly, it is ordered that judgment enter for the defendant Hayeck on Commerce’s complaint, that judgment enter for the defendant Commerce on Hayeck’s counterclaims and that judgment enter for the defendant Nancy Bryson on Hayeck’s cross claims.

In fact, Biyson had withdrawn $50,000 of this NENMCO account on January 7, 1992, which Gennaro admitted he *128 could readily have ascertained, had he bothered to do so.

Although the note and renewal note each contained language wherein every party “assents to . . . substitution, exchange or release of collateral granted or permitted by the holder,” Hayeck was expressly assured, first by Bryson, and then by Gennaro, that this would not occur. While the notes were “integrated documents” that cannot absent oral modification for consideration, be varied by parole evidence, see Cambridgeport Savings Bank v. Boersner 413 Mass. 432, 439 (1992), the Court finds that these oral assurances constituted, in the circumstances, negligent misrepresentations upon which Hayeck reasonably relied to his detriment. Hogan v. Riemer, 35 Mass.App.Ct. 360, 365 (1993).